In re PETROLEUM PRODUCTS ANTITRUST LITIGATION.

*The State of California, etc. v. Standard Oil Company of California, et al.,* N.D. Cal., Civil Action No. C–75–1322–SC.

No. 150.

Judicial Panel on Multidistrict Litigation.

Jan. 21, 1976.

Before ALFRED P. MURRAH *, Chairman, and JOHN MINOR WISDOM, EDWARD WEINFELD, EDWIN A. ROBSON *, WILLIAM H. BECKER, JOSEPH S. LORD, III, and STANLEY A. WEIGEL, Judges of the Panel.

OPINION AND ORDER

PER CURIAM.

I. *Overview*

The Panel, pursuant to 28 U.S.C. § 1407, previously transferred an action pending in the District of Kansas to the District of Connecticut and, with the consent of that court, assigned it to the Honorable T. Emmet Clarie for coordinated or consolidated pretrial proceedings with · an action pending there.[1] Since the above-captioned action appeared to raise questions of fact common to the actions in the transferee district, the Panel ordered the parties to show cause why it should not likewise be transferred to the District of Connecticut for centralized pretrial proceedings. Except for plaintiff State of California and defendant Union Oil Company of California (hereinafter referred to as "California" and "Union," respectively), both of whom oppose transfer, all parties generally agree that the *California* action should be included with the *Kansas* and *Connecticut* actions for coordinated or consolidated pretrial proceedings. These parties disagree, however, over whether the litigation should be retransferred to the Northern District of California or remain in the District of Connecticut.

We find that this tag-along action involves questions of fact common to the actions now pending for pretrial purposes in the District of Connecticut and that its transfer to that district for inclusion in the coordinated or consolidated pretrial proceedings under Section 1407 will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation.

II. *The California Action*

*California* was instituted by the State of California on its own behalf and as the representative of similarly situated political subdivisions and special districts located within the State. As a purchaser of refined petroleum products and the owner of various crude oil producing lands, California charges that eleven major oil companies have engaged in past and present violations of Sections 1 and 2 of the Sherman Anti-Trust Act (15 U.S.C. §§ 1 and 2), as well as violations of the California antitrust laws, by conspiring (1) to unreasonably restrain interstate trade in the production, transportation and refining of crude oil and in the distribution and marketing of refined products, and (2) to monopolize the aforementioned commerce. More specifically, it is alleged that defendants agreed to, *inter alia*, eliminate competition in the production of crude oil and the sale of refined products, artificially fix the prices at which crude oil and refined products may be purchased or sold, allocate customers for refined products, and artificially create a scarcity of crude oil and refined products. Plaintiffs seek treble damages, injunctive relief against any continuation of the alleged violations, and divestiture by defendants of their interest, control or ownership of the production of crude oil in California.

III. *The Question of Inclusion of the California Action*

During oral argument before the Panel, plaintiff California submitted that "all the facts or sufficient facts are not yet known to be able to say with particularity—these are the common facts and these are the uncommon facts, and that one is necessarily outweighing the other.

---

* Judges Murrah and Robson were unable to attend the Panel hearing and, therefore, took no part in the consideration or decision of this matter.

1. *In re Petroleum Products Antitrust Litigation,* 393 F.Supp. 1091 (Jud.Pan.Mult.Lit.1975).

We are confronted with a situation where there will be common facts and uncommon facts, and a great deal of common issues and uncommon issues."[2] Nonetheless, California maintains either that *California* should be left alone or that the whole litigation should be re-transferred to join *California* in the Northern District of California. Plaintiff argues that California constitutes a distinct market for crude oil and refined products because of the state's (1) crude oil production, (2) isolation from other domestic crude oil production, (3) substantial refining facilities, and (4) separate federal import restrictions, until recently, on foreign crude oil. Defendant Union, strongly opposing *California's* involvement in any coordinated or consolidated pretrial proceedings, adds that, on account of the distinctiveness of the California market, proving a conspiracy exists in the production, transportation and refining of crude oil and the marketing of refined products in *California* will be different from the evidence required to demonstrate the presence of a conspiracy in *Kansas* and *Connecticut* concerning the same activities. Union and California stress that many factual differences between *California* and the litigation in the transferee district arise from California's ownership of oil producing lands. Union also fears that transfer of *California* will delay its resolution.

We are persuaded that *California* should be included in the coordinated or consolidated pretrial proceedings. All eleven defendants in *California* are already defendants in the litigation in the transferee district. All of them, except Union, favor transfer. Plaintiff California, as we mentioned earlier, recognizes the commonality of factual issues among the various actions involved here, but seems primarily concerned about keeping its action at home. In considering whether to include an action under Sec-

tion 1407, we are necessarily influenced by the pleadings. *See In re Professional Hockey Antitrust Litigation*, 369 F.Supp. 1119, 1120 (Jud.Pan.Mult.Lit.1974). The amended complaint in *California*, like the complaints in *Kansas* and *Connecticut*, contain substantially similar allegations that the defendants violated the federal antitrust laws by conspiring to fix prices and eliminate competition from the well-head to the ultimate consumer, the gamut of the vertically-integrated, international petroleum industry. These allegations, prima facie, raise extremely complex, common factual questions. As only Union would have us believe, we cannot, upon analyzing the three complaints, accept the proposition that the California oil industry is an island unto itself.[3] *California's* inclusion in the ongoing Section 1407 proceedings will therefore eliminate duplication of discovery, prevent the possibility of inconsistent pretrial rulings, and conserve effort on the part of the parties, the witnesses and the judiciary.

We also acknowledge the existence of factual issues unique to *California*. Similarly, factual issues unique to *Connecticut* and *Kansas* were present when we initially considered this litigation. The transferee judge, however, has the broad discretion to design a pretrial program in which discovery on any unique issues can proceed concurrently with discovery on the common issues. *See In re Republic National-Realty Equities Securities Litigation*, 382 F.Supp. 1403, 1405–06 (Jud.Pan.Mult.Lit.1974). Such a program will allow the litigation to proceed expeditiously in all arenas, while the parties can take advantage of the benefits to be gained by coordinated or consolidated pretrial proceedings.

IV. *The Question of Retransfer*

The State of Kansas joins California in its alternative position urging the Panel

---

**2.** Transcript at 15.

**3.** *See generally In re Midwest Milk Monopolization Litigation*, 379 F.Supp. 992 (Jud.Pan. Mult.Lit.1974), in which we transferred a tag-

along action despite defendants' arguments that the action should not be processed with the previously transferred litigation because of the addition of a new, distinct market.

to retransfer this litigation to the Northern District of California. Generally, plaintiff California argues that California is the "center of gravity" for pretrial purposes because it is the dominant state in this litigation in terms of crude oil production, refining facilities and petroleum product consumption; many of the alleged conspiratorial acts occurred there; several defendants' headquarters along with many relevant documents are located there; several witnesses reside there; *California* is more advanced than either of the other two actions in light of an extensive investigation conducted by the State prior to the commencement of its action; and the State has the experience and financial resources to prosecute this litigation aggressively.

■ In the past, we have been extremely reluctant to retransfer litigation under Section 1407. *See, e. g., In re Nissan Motor Corporation Antitrust Litigation*, 385 F.Supp. 1253, 1255–56 (Jud. Pan.Mult.Lit.1974); *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 368 F.Supp. 812, 813 (Jud.Pan. Mult.Lit.1973); *In re Glenn W. Turner Enterprises Litigation*, 368 F.Supp. 805 (Jud.Pan.Mult.Lit.1973); *In re Plumbing Fixtures*, 332 F.Supp. 1047 (Jud.Pan. Mult.Lit.1971); *In re Antibiotic Drugs*, 320 F.Supp. 586 (Jud.Pan.Mult.Lit.1970). This reluctance is founded on mainly two grounds: first, the question of the most appropriate transferee forum should not be relitigated every time another action is considered for inclusion in the centralized pretrial proceedings of a previously transferred litigation because it could destroy the effectiveness of Section 1407; and secondly, effort expended by the original transferee court in supervising the litigation would be wasted. These principles, especially the latter one, are certainly applicable here and, therefore, we see no reason to order retransfer.

■ Addressing ourselves more specifically to California's arguments, we observe that there is no real center of gravity in this litigation for pretrial purposes inasmuch as defendants' headquarters, their documents and their witnesses, which of course will be the focal points of discovery, are scattered throughout the country. Moreover, we are advised that extensive investigations preceded the filing of not only *California*, but *Kansas* and *Connecticut* as well. Furthermore, on the basis of California's past performances in multidistrict litigation, we are confident that its experience and resources will be put to good use regardless of the location of the transferee district.

It is therefore ordered that, pursuant to 28 U.S.C. § 1407, the action entitled *The State of California, etc. v. Standard Oil Company of California, et al.*, N.D. Cal., Civil Action No. C–75–1322–5C, be, and the same hereby is, transferred to the District of Connecticut and, with the consent of that court, assigned to the Honorable T. Emmet Clarie for coordinated or consolidated pretrial proceedings with the *Kansas* and *Connecticut* actions.

EDWARD WEINFELD, Judge (dissenting).

I respectfully dissent from the majority's decision to include *California* in the Section 1407 proceedings pending in the District of Connecticut.

The majority has concluded that transfer of *California* is appropriate primarily because of the common factual questions it shares with the other two actions resulting from "substantially similar allegations that the defendants violated the federal antitrust laws by conspiring to fix prices and eliminate competition from the wellhead to the ultimate consumer, the gamut of the vertically-integrated, international petroleum industry." (Majority Opinion at p. 251). The majority reaches this conclusion from its examination of the complaints. (Majority Opinion at p. 251).

In light of the magnitude and complexity of these actions and the thorough factual development of the record before the Panel, I would go beyond the pleadings in determining the propriety of inclusion of *California* in the Section 1407

proceedings. Although all complaints do indeed contain similar broad allegations of antitrust law violations, it is my view that discovery on the critical elements of liability will differ substantially as between *California* on the one hand and *Kansas* and *Connecticut* on the other. Accordingly, I would hold that the just and efficient conduct of all actions is not promoted by coupling *California* with the other two actions.

The majority acknowledged the existence of factual issues unique to *California*. I am of the view they are so unique that California's action should be recognized as such. Historically, various economic and geographic factors have required that the production of crude oil and the refining and marketing of petroleum products in the western United States be conducted separately from similar activities in the eastern portion of the nation. Recognizing the divergence between these two regions, the federal government has designated all states west of the Rocky Mountains as Petroleum Administration District V (PAD V), while Petroleum Administration Districts I–IV (PAD I–IV) are comprised of the states east of the Rockies.

The functional and historic differences between PAD V and PAD I–IV will, in my view, require distinct discovery in *California* with respect to the effect that defendants' activities had in the relevant geographic market encompassed within PAD V. Since evidence regarding the causal relationship between defendants' alleged illegal activities and the resultant harm suffered by plaintiff State of California and its political subdivisions in their particular geographic market is essential in order to establish the fact of their injury and, thus, impose treble damage liability on defendants, *cf. Schumate & Co., Inc. v. National Association of Securities Dealers, Inc.*, 509 F.2d 147, 151, 155 (5th Cir. 1975), I conclude that the differences between the actions are substantial enough to justify leaving *California* alone.

Although some overlap may result if *California* is permitted to proceed independently, I believe that the overall just and efficient conduct of all actions would be enhanced by such a procedure. In a somewhat analogous situation, the Panel recently refused to transfer a tag-along action in *In re Sugar Industry Antitrust Litigation*, 399 F.Supp. 1397 (Jud. Pan.Mult.Lit.1975),[1] preferring to leave that action on the East Coast although Section 1407 proceedings were already pending on the West Coast. The Panel recognized the existence of some common questions of fact between *Freedman* and the litigation in the transferee court but nonetheless refused transfer concluding that "the difference between defendants [East v. West], market areas and economic and conspiratorial issues is significantly preponderant." *Id.* at 1400. In my judgment, the real economic and geographic differences between PAD V and PAD I–IV dictate that we should likewise refuse to transfer *California* to the District of Connecticut.

Alternatively, I would favor the re-transfer of *Kansas* along with *Connecticut* to the Northern District of California for coordinated or consolidated pretrial proceedings with *California* in that forum. In my judgment, had the *California* action been before us at the time the *Kansas* and *Connecticut* actions were considered for transfer, all three actions would have been transferred to California.

---

1. *Milton W. Freedman, et al. v. Amalgamated Sugar Co., et al.*, E.D.Pa., 399 F.Supp. 1397.