### In re PETROLEUM PRODUCTS ANTITRUST LITIGATION.

*The City of Long Beach, as Trustee for the State of California, and the State of California, as Beneficiary v. Standard Oil Company of California, et al.,* C.D. Calif., Civil Action No. C–75–2232–WPG, And Other Actions.

### No. 150.

Judicial Panel on Multidistrict Litigation.

Aug. 31, 1976.

OPINION AND ORDER *

Before JOHN MINOR WISDOM, Chairman, and EDWARD WEINFELD, EDWIN A. ROBSON, WILLIAM H. BECKER,** JOSEPH S. LORD, III,** STANLEY A. WEIGEL,*** and ANDREW A. CAFFREY,*** Judges of the Panel.

PER CURIAM.

## I. BACKGROUND OF THE LITIGATION

On April 15, 1975, the Panel transferred an antitrust class action instituted by the State of Kansas against twelve major oil companies ("Kansas" hereinafter) in the District of Kansas to the District of Connecticut for coordinated or consolidated pretrial proceedings with a similar action pending in that forum and commenced by the State of Connecticut against the twelve oil producers plus eleven more. This litigation was assigned to Chief Judge T. Emmet Clarie. The Panel determined that pretrial proceedings pursuant to 28 U.S.C. § 1407 were warranted for these two actions be-

---

* As discussed in the text more fully, *infra,* this opinion and order relates to both (1) a motion to transfer made by certain defendants, and (2) an order issued by the Panel to show cause why the above-captioned litigation, previously transferred to the District of Connecticut, should not be retransferred to the Central District of California.

** Although Judges Becker and Lord were unable to attend the Panel hearing concerning the order to show cause, they have, with the consent of all parties, participated in this decision.

*** Judges Weigel and Caffrey recused themselves and took no part in the consideration or decision of any matters discussed herein.

cause of, *inter alia,* the existence of complex common factual questions arising from similar complaints which charge common defendants with jointly and severally violating various federal antitrust laws, and which, in essence, challenge the structure and business practices of the petroleum industry on national, state and local levels. *In re Petroleum Products Antitrust Litigation,* 393 F.Supp. 1091 (Jud.Pan.Mult.Lit. 1975). On January 21, 1976, the Panel transferred a similar antitrust class action commenced by the State of California ("California" hereinafter) against eleven of the same oil producers involved in the *Kansas* and *Connecticut* actions to the District of Connecticut for inclusion in the Section 1407 pretrial activities. Again, the presence of common defendants and complex common factual questions was a primary reason for transfer. *In re Petroleum Products Antitrust Litigation,* 407 F.Supp. 249 (Jud.Pan.Mult.Lit.1976).

Subsequently, on February 13, 1976, defendants Standard Oil Company of California, Shell Oil Company ("Shell" hereinafter) and Exxon Corporation ("Exxon" hereinafter) moved the Panel for an order transferring the above-captioned *City of Long Beach* action ("Long Beach" hereinafter) pending in the Central District of California before Judge William P. Gray, to the District of Connecticut for inclusion in the Section 1407 proceedings. Thereafter, defendant Union Oil Company similarly moved the Panel and, alternatively, requested retransfer of *California* to the Central District of California for only coordinated pretrial proceedings with *Long Beach* pursuant to Section 1407. In addition, defendant Atlantic Richfield Company submitted a letter requesting the Panel to enter an order conditionally transferring *Long Beach* to the District of Connecticut.[1] De-

fendants Gulf Oil Corporation ("Gulf" hereinafter) and Mobil Oil Corporation ("Mobil" hereinafter) each responded supporting the motions to transfer *Long Beach* to the District of Connecticut. Plaintiff State of Connecticut responded favoring transfer of *Long Beach* to Connecticut and opposing defendant Union's motion to retransfer *California* to the Central District of California. Plaintiffs State of California and City of Long Beach individually opposed the various motions to transfer *Long Beach* to the District of Connecticut. Plaintiff State of California, however, supported defendant Union's motion to retransfer *California* to the Central District of California for solely coordinated pretrial proceedings with *Long Beach* and, in addition, stated that *California* also could be retransferred to the Northern District of California for inclusion in coordinated pretrial activities with *Long Beach* there.

At the Panel hearing held on March 26, 1976, regarding defendants' motions, it became apparent to the Panel that, instead of solely determining whether *Long Beach* should be transferred to the District of Connecticut for inclusion in the Section 1407 pretrial proceedings there, the unique development of this litigation might require retransfer of some or all of these actions to another district for coordinated or consolidated pretrial activities. Consequently, the Panel deferred ruling on defendants' motions and issued an order on March 29, 1976, to every party involved in *Kansas, Connecticut, California* and *Long Beach* to show cause why the three actions pending in the District of Connecticut should not be retransferred pursuant to Section 1407 to the Central District of California for coordinated or consolidated pretrial proceedings with *Long Beach.* Plaintiffs Connecticut, Kansas, Florida[2] and California now favor re-

---

**1.** No conditional transfer order was entered because of the pending motions of defendants Standard, Shell, Exxon and Union.

**2.** Another related antitrust class action instituted by the State of Florida against seventeen major oil producers in the Northern District of

Florida was denied inclusion in this litigation by the Panel approximately one year ago because at that time it was in an appellate posture before the United States Court of Appeals for the Fifth Circuit. *In re Petroleum Products Antitrust Litigation,* 393 F.Supp. 1091 (Jud.Pan. Mult.Lit.1975). In January 1976, the Fifth Cir-

transfer of the previously transferred actions to the Central District of California. Plaintiff California alternatively requests that the Northern District of California be designated as the transferee district. Plaintiff Long Beach still prefers that its action be left alone in the Central District of California. Apparently anticipating that *Florida* would soon be included in this litigation, plaintiff City of Long Beach alternatively suggests bifurcated pretrial processing of this litigation, whereby *Kansas, Connecticut* and *Florida* would proceed before Chief Judge Clarie in the District of Connecticut, while *Long Beach* and *California* would proceed before Judge Gray in the Central District of California. As a third alternative, the City of Long Beach favors retransfer of the entire litigation to the Central District of California. Opposed to retransfer are 22 defendants involved in one or more of the four actions other than *Florida.*[3]

█ Since certain defendants have moved the Panel for an order transferring *Long Beach* to the District of Connecticut under Section 1407, a unique combination of unanticipated material facts have been revealed concerning the relationship of *Long Beach* with *California, Kansas, Connecticut* and *Florida,* individually and collectively. As a result, we have found it necessary to reexamine our prior decisions concerning transfers of this litigation. On the initiative of the Panel, we therefore consider our March 29, 1976, order to show cause why this litigation should not be retransferred as a rehearing of plaintiff Connecticut's original motion to transfer some of these actions to a single forum for coordinated or consolidated pretrial proceedings and also as a rehearing of our original selection of

the District of Connecticut as the transferee district, as well as a subsequent request to retransfer this litigation elsewhere. Hence, upon consideration of the papers submitted and the oral arguments heard, we find that *Long Beach* and *Florida* share common factual questions with the previously transferred litigation and that transfer of *Florida, California, Kansas* and *Connecticut* to the Central District of California for coordinated or consolidated pretrial proceedings with *Long Beach* pursuant to Section 1407 will best serve the convenience of the parties and witnesses and promote the just and efficient conduct of this litigation. To that end, on rehearing, under the unique combination of circumstances, we vacate the original orders of transfer to the District of Connecticut.

## II. THE LONG BEACH AND FLORIDA ACTIONS

*Long Beach* was commenced by the City of Long Beach, as statutory trustee for the State of California, against seven major oil companies and Thums Long Beach Company, a company wholly-owned by five of the companies, alleging violations of federal and state antitrust laws and breach of contract. Thereafter, the State of California became a named plaintiff. The complaint in *Long Beach* alleges that the City of Long Beach is the owner of certain tidelands and submerged lands conveyed to it by the State of California. Within this area lies Tract I of the Long Beach Unit, Wilmington Oil Field, which is a tract of land that, together with certain other parcels of land within the city limits of Long Beach, is committed to a unitized oil and gas production operation. It also is alleged that the

cuit reversed the district judge and held that the Florida Attorney General does have the common law authority to institute legal action on behalf of the state. *State of Florida ex rel. Shevin v. Exxon Corp.,* 526 F.2d 266 (5th Cir. 1976).

By the time of the April 23, 1976, Panel hearing regarding the order to show cause, the United States Supreme Court had denied defendant-appellee Standard Oil Company's application for a stay of the Fifth Circuit's mandate, and the Fifth Circuit had denied other defendant-appellees' application for modification of its mandate. Therefore, since the *Florida* action was returned to the district court level, the State of Florida requested, and no party objected, to have the *Florida* action included in these proceedings now rather than to have it treated as a tag-along action at a later time. We grant this request.

**3.** Many of these defendants are also defendants in the *Florida* action.

seven defendant oil companies are producers, purchasers, transporters, refiners and marketers of crude oil and refined oil products within the State of California. Of these defendants, Texaco, Mobil, Union, Exxon, and Shell jointly constitute the Field Contractor of the Long Beach Unit, which is entitled and obligated to take an undivided 80 percent of the oil and gas produced from the Long Beach Unit that is allocated to Tract I. As the Field Contractor, these defendants, acting under the direction and control of the City of Long Beach, have the exclusive right, responsibility and obligation to conduct daily operations for the exploration and development of Tract I. In return, these defendants are obligated to pay to the City of Long Beach a percentage of the revenues derived from the production and sale of the oil and wet gas products produced from the Long Beach Unit and allocated to Tract I, after the deduction of certain expenses. The revenues payable to the City of Long Beach are affected directly and proportionately by the nature of the oil allocated to Tract I when such oil is taken by defendants as the Field Contractor. The two remaining defendants, Standard and ARCO, and two nondefendant oil companies, constitute the two Nonoperating Contractors of the Long Beach Unit, each group being entitled and obligated to take an undivided ten percent of the oil and gas produced by the Long Beach Unit and allocated to Tract I. In all other respects previously stated, their situation is similar to the other defendant oil producers operating as the Field Contractor. Thums, the eighth defendant, is a joint venture crude oil production corporation formed and wholly-owned by five defendants, Texaco, Mobil, Exxon, Union and Shell. In substantial part, Thums is engaged in the business of exploration, development, production and distribution of crude oil in Tract I.

Count One of the complaint charges defendants with violating Sections One and Two of the Sherman Act by engaging in a combination and conspiracy to establish and stabilize the prices of crude oil at unreasonably low and artificial levels, to restrain trade and commerce, and to monopolize the exploration, development, production, distribution and sale of crude oil from the property that the City of Long Beach owns or over which it has exclusive jurisdiction. As a result of defendants' conduct, plaintiffs allege that the City of Long Beach has been unable to issue and administer fully the leases or contracts for the exploration, development and production of crude oil from this property and, furthermore, that plaintiffs have sustained losses in revenues from these contracts and leases as a result. Count Two is a pendent claim to Count One and is brought pursuant to California's *Business and Professions Code* for the aforementioned injuries allegedly sustained by plaintiffs. Another pendent claim to Count One is Count Three, which is commenced solely by plaintiff City of Long Beach for breach of contract and to secure an accounting because of defendants' alleged failure to pay plaintiff the true amounts as required under certain contracts. For these claims, plaintiffs seek as relief treble damages, an accounting, an injunction restraining defendants from continuing the alleged unlawful acts, and other appropriate equitable relief to rectify the effects of defendants' alleged wrongful practices.

Defendant Shell has filed a counterclaim against the plaintiff City of Long Beach only alleging that the plaintiff City has conspired with independent crude oil producers (a) to fix the price at which crude oil is sold, (b) to eliminate Shell and other companies as competitors in the production of certain crude oil in California, (c) to restrain competition in the purchase and sale of crude oil, and (d) to commence the *Long Beach* action in furtherance of its conspiracy to restrain trade.

*Florida,* was instituted against various oil companies by the State of Florida as an antitrust class action on behalf of all its agencies, departments and political subdivisions which are consumers of petroleum products. The complaint generally alleges that defendants violated Sections One and Two of the Sherman Act by conspiring to

fix prices of petroleum products and to eliminate competition from the wellhead to the ultimate consumer in the State of Florida as well as nationally. The State of Florida seeks treble damages, injunctive relief and divestiture by defendants of segments of their vertically-integrated business structure.

## III. INCLUSION OF LONG BEACH AND FLORIDA IN THE COORDINATED OR CONSOLIDATED PRETRIAL PROCEEDINGS

Except for plaintiff City of Long Beach, all parties believe that *Long Beach* should be included with one or all of the previously transferred actions in a single district for Section 1407 treatment. Inasmuch as no party objects to the inclusion of *Florida,* and we agree that the statutory criteria for its conclusion are satisfied, we will focus our attention on *Long Beach.*

While plaintiff City of Long Beach concedes that its action shares common questions of fact with *California,* plaintiff nevertheless maintains that *Long Beach* is distinct enough to be left alone. Plaintiff argues that the petroleum industry on the West Coast, particularly the oil field involved in *Long Beach,* requires different and more extensive discovery of facts peculiar to that portion of the country, and not germane to the other actions save *California.* Specifically, plaintiff City of Long Beach enumerates the following several differences that, it maintains, exist between *Long Beach* and the broader and more comprehensive previously transferred actions: (1) In *Long Beach* injuries are alleged resulting exclusively from a conspiracy to depress the prices paid by defendants to plaintiffs as sellers of crude oil from Tract I, whereas the previously transferred actions are concerned in large measure with injuries allegedly sustained as a result of a nationwide conspiracy to inflate the price that persons paid as purchasers of refined petroleum products; (2) in *Long Beach* all the damages sought by the plaintiff relate to the development and sale of crude oil from Tract I, whereas in the prior transfer-

red actions there is cumulatively presented attacks on the oil industry worldwide and injuries are alleged to have resulted from all the producing, distributing and selling activities of the oil companies; (3) *Long Beach* involves substantial breach of contract issues, a California state antitrust charge, and a federal antitrust counterclaim related to the breach of contract claim, which are unique issues requiring factual discovery totally irrelevant to the main federal antitrust aspects of *Long Beach* and the previously transferred actions; and (4) unlike the other actions, *Long Beach* is not a class action, and only the plaintiffs in *Long Beach* and *Florida* have established their standing to sue. For these reasons, plaintiff City of Long Beach asserts that these different issues in *Long Beach* and, to a lesser extent, in *California,* predominate over the common factual issues in the transferred actions and, hence, preclude the transfer of *Long Beach.* In addition, plaintiff contends that transfer of *Long Beach* is inappropriate for a lack of common parties because, of the seventeen oil producers that are defendants in two or more of the previously transferred actions, only seven are defendants in *Long Beach,* while one of the *Long Beach* defendants, Thums, is not a defendant in any of the transferred actions.

Moreover, plaintiff City of Long Beach maintains that transfer of *Long Beach* would neither serve the convenience of the parties and their witnesses nor promote the just and efficient disposition of this litigation since all the alleged acts of the parties and all the relevant documentation and witnesses concerning the operation of Tract I occurred, are located in or reside in California; that because of the differences in parties and issues, the inclusion of *Long Beach* in the current Section 1407 proceedings would impose upon the transferee court the burden of coordinating discovery for what are essentially two different types of actions of substantial magnitude; that confusion would result, rather than a savings of judicial and litigant resources; and that transfer will condemn *Long Beach* to die as it awaits the conclusion of discovery in the broader nationwide litigation now before

Chief Judge Clarie in the District of Connecticut.

We are not persuaded by the contentions of the City of Long Beach in opposition to inclusion of *Long Beach* in the Section 1407 proceedings. To begin with, we adhere to our prior determination that *California, Connecticut* and *Kansas* should be transferred for coordinated or consolidated pretrial proceedings in a single district. *In re Petroleum Products Antitrust Litigation,* 407 F.Supp. 249 (Jud.Pan.Mult.Lit.1976). *Florida* was thereafter added and should be included as well. Even though plaintiff City of Long Beach prefers to be left alone, it recognizes that its action shares common questions of fact with *California* arising from the fact that both actions challenge substantially the same defendants' practices in relation to the production of crude oil. Indeed, an examination of the complaints in *Long Beach* and *California* reveals that at least the antitrust aspects of the former is virtually subsumed in the latter. Thus, the inclusion of *Long Beach* in the coordinated or consolidated pretrial proceedings will eliminate the possibility of duplication of discovery and prevent inconsistent pretrial rulings on common questions.

■ In our earlier opinions regarding *California, Connecticut* and *Kansas,* we recognized the existence of factual issues unique to each of those actions. Similarly, we acknowledge the presence of such issues pertaining to *Long Beach* and *Long Beach* and *California* taken together. As we pointed out in the previous opinions in this litigation, however, the transferee judge has the broad discretion to design a pretrial program and schedules under which discovery and other pretrial activities on any unique issues can proceed concurrently with discovery and other pretrial proceedings on the common issues. *See In re Republic National-Realty Equities Securities Litigation,* 382 F.Supp. 1403, 1405–06 (Jud.Pan. Mult.Lit.1974). Such a program and schedules will allow the litigation to proceed expeditiously in all areas, while the parties, the witnesses and the judiciary can take advantage of the benefits to be gained by coordinated or consolidated pretrial proceedings. The degree and manner of coordination or consolidation among all these actions is, of course, totally within the discretion of the transferee judge. *See In Re Equity Funding Corporation of America Securities Litigation,* 375 F.Supp. 1378, 1384 (Jud.Pan.Mult.Lit.1974).

## IV. THE TRANSFEREE DISTRICT

The defendants oppose retransfer of this litigation to the Central District of California and argue as follows: (1) retransfer would subvert the purposes of Section 1407 by a relitigation of issues previously decided by the Panel; (2) it would produce a loss of momentum, continuity and experience gained by both Chief Judge Clarie and counsel; (3) retransfer would disrupt the decisional process undertaken by Chief Judge Clarie on fourteen significant *sub judice* motions; (4) it would have an unsettling effect on the Panel's own judicial business by inviting petitions for retransfer of other present and future multidistrict litigations; (5) retransfer would inconvenience the parties and their witnesses since the majority of these defendants has headquarters, operations, staff and documents in the East; and (6) it would delay the just and efficient disposition of this litigation because Chief Judge Clarie's extensive organization of this litigation would be destroyed, and because the substantial effort and expense incurred by defendants' eastern counsel into a factual understanding of this litigation would be dissipated.

■ We disagree with defendants. When we first considered this litigation, only *Kansas* and *Connecticut* were before us for inclusion in coordinated or consolidated pretrial proceedings, while *Florida* had been dismissed and was on appeal before the Fifth Circuit. The District of Connecticut stood out as the most suitable transferee forum. *In re Petroleum Products Antitrust Litigation,* 393 F.Supp. 1091 (Jud. Pan.Mult.Lit.1975). Then *California* was added and the question of retransfer was raised by the parties. The majority of the

Panel rejected retransfer with the following observation:

> In the past, we have been extremely reluctant to retransfer litigation under Section 1407. *See, e. g., In re Nissan Motor Corporation Antitrust Litigation,* 385 F.Supp. 1253, 1255–56 (Jud.Pan.Mult. Lit.1974); *In re Air Crash Disaster at Florida Everglades on December 29, 1972,* 368 F.Supp. 812, 813 (Jud.Pan.Mult.Lit. 1973); *In re Glenn W. Turner Enterprises Litigation,* 368 F.Supp. 805 (Jud.Pan. Mult.Lit.1973); *In re Plumbing Fixtures,* 332 F.Supp. 1047 (Jud.Pan.Mult.Lit.1971); *In re Antibiotic Drugs,* 320 F.Supp. 586 (Jud.Pan.Mult.Lit.1970). This reluctance is founded on mainly two grounds: first, the question of the most appropriate transferee forum should not be relitigated every time another action is considered for inclusion in the centralized pretrial proceedings of a previously transferred litigation because it could destroy the effectiveness of Section 1407; and secondly, effort expended by the original transferee court in supervising the litigation would be wasted. *In re Petroleum Products Antitrust Litigation,* 407 F.Supp. 249, 252 (Jud.Pan.Mult.Lit.1976).

Judge Weinfeld, in his dissent, noted that if *California* had been before the Panel at the time *Kansas* and *Connecticut* were considered for transfer, all three actions would have been transferred to California. *Id.* at 253. Although we strongly adhere to our prior comments regarding our reluctance to retransfer litigation under Section 1407, the entire Panel is now persuaded that the addition of *Long Beach* has swung the pendulum to such a degree that the unique circumstances of this litigation warrant changing the transferee district to the Central District of California. In struggling with the question of retransfer and assessing the various arguments of the parties, two factors have been revealed that outweigh the policy considerations behind our reluctance to retransfer litigation.

First, on the basis of the record before us, we are persuaded by the parties who argue that the Central District of California is preferable because the District of Connecti-cut is more overburdened. Indeed, according to the latest statistics available, the former has a significantly lighter caseload per judge and terminates actions significantly quicker. *See 1976 Semi-Annual Report of the Director of the Administrative Office of the United States Courts,* Tables C1 at 68–69, C5 at 84–85 and D1 at 98–99; *Administrative Office of the United States Courts, Management Statistics for United States Courts* (1975) at 21 and 103. The fact that the structure and business practices of the oil industry are extremely complex is no secret to anyone and underlies our thoughts on this matter. Surely, much judicial attention will be required to process this litigation. As a result, in the long run the Central District of California is in a better position to process this litigation toward its most expeditious conclusion despite the fact that Judge Clarie has become familiar with this litigation. We note that any pretrial processing heretofore accomplished in Connecticut may be adopted by the new transferee judge to whatever extent he deems appropriate and, thereby, the momentum of this litigation will be preserved.

Secondly, of all the states involved in this litigation, California is clearly dominant in terms of crude oil production, refining facilities and petroleum product consumption. Moreover, as all the state plaintiffs pointed out to us, the State of California most likely will take the lead role in processing this litigation on their behalf in light of its experience and financial resources.

Finally, we do not share defendants' fear that retransfer of this litigation will increase the likelihood of retransfer petitions in other multidistrict litigations because it will be a rare occurrence when multidistrict litigation will present such unique developments.

IT IS THEREFORE ORDERED that the two previous opinions and orders in this litigation, *In re Petroleum Products Antitrust Litigation,* 393 F.Supp. 1091 (Jud.Pan. Mult.Lit.1975); 407 F.Supp. 249 (Jud.Pan. Mult.Lit.1976), be, and the same hereby are,

**720**

VACATED, insofar as those opinions and orders relate to the designation of the District of Connecticut as the transferee district for this litigation.

IT IS FURTHER ORDERED that the actions listed on the following Schedule A and pending in districts other than the Central District of California be, and they hereby are, transferred to the Central District of California and, with the consent of that court, assigned to the Honorable William P. Gray for coordinated or consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407 with the action listed on Schedule A and pending in that district.

SCHEDULE A

District of Connecticut

| | |
|---|---|
| State of Connecticut v. Amerada Hess Corp., et al. | Civil Action No. H–114 |
| State of Kansas, etc. v. Exxon Corp., et al. | Civil Action No. H–75–203 |
| State of California, etc. v. Standard Oil Company of California, et al. | Civil Action No. H–76–75 |

Northern District of Florida

| | |
|---|---|
| State of Florida ex rel. Robert L. Shevin, Attorney General v. Exxon Corporation, et al. | Civil Action No. 73–112–Civ–T |

Central District of California

| | |
|---|---|
| The City of Long Beach, etc. v. Standard Oil Company of California, et al. | Civil Action No. 75–2232–WPG |