In re COORDINATED PRETRIAL PRO-
CEEDINGS IN PETROLEUM PROD-
UCTS ANTITRUST LITIGATION
M.D.L. No. 150.

Appeal of CITY OF LONG BEACH and
State of California.

Chevron Corporation, Exxon Corpora-
tion, Mobil Oil Corporation, Shell Oil
Corporation, Texaco, Inc., and Union
Oil Company of California, Appellees.

Nos. 9–87, 9–93 and 9–94.

Temporary Emergency Court of Appeals.

Argued Dec. 12, 1985.

Decided March 31, 1986.

Gary W. Hoecker and M. Brian McMa-
hon, of Hoecker & McMahon, Los Angeles,
Cal., Royce H. Schulz, William L. Jaeger
and Gary L. Halling, of Broad, Schulz, Lar-
son & Wineberg, San Francisco, Cal., John
R. Calhoun and Robert W. Parkin, City
Attys., and James N. McCabe and Robert
G. Austin, Deputy City Attys. of City of
Long Beach, Long Beach, Cal., John Van
deKamp, Atty. Gen., Michael Spiegel,
Charles M. Kagay, San Francisco, Cal., and
Sanford N. Gruskin, Deputy Attys. Gen. of
State of California, Los Angeles, Cal., Tay-
lor R. Briggs, Kimba M. Wood, Howard S.

Ockman and Molly S. Boast, of LeBouef, Lamb, Leiby & MacRae, New York City, for appellants.

Ronald C. Redcay, Los Angeles, Cal., Otis Pratt Pearsall and Matthew T. Heartney, of Hughes Hubbard & Reed, New York City, Anthony P. Brown, Walter R. Allan, Philip L. Judson, Robert P. Taylor and Edward V. Anderson, of Pillsbury, Madison & Sutro, San Francisco, Cal., for appellees.

Before WILLIAM H. BECKER, WESLEY E. BROWN and McNICHOLS, Judges.

WILLIAM H. BECKER, Judge.

These appeals in Temporary Emergency Court of Appeals (TECA), Nos. 9–87, 9–93 and 9–94 were consolidated and set for oral argument on December 12, 1985. The writing of these opinions was originally assigned to the Honorable Ray McNichols, who had written the opinion and orders allowing an interlocutory appeal under § 1292(b), Title 28 U.S.C., in TECA No. 9–87 on limited issues. *In Re: Coordinated Pre-Trial. Proceedings in Petroleum Products Antitrust Litigation M.D.L. No. 150* (TECA 1985), 761 F.2d 710. Because of the sudden and untimely death of Judge McNichols, the writing of these opinions has been reassigned.[1] The two opinions and judgments in the consolidated appeals follow.

## APPEAL IN NO. 9–87

*JUDGMENT DISMISSING INTERLOCUTORY APPEAL WITHOUT PREJUDICE*

This interlocutory appeal previously permitted by this Court under § 1292(b) of Title 28, United States Code, [§ 1292(b)] will now be dismissed *without prejudice to the factual and legal contentions of the parties,* for reasons stated hereinafter.

---

1. These appeals were fully briefed and orally argued before the Panel and submitted for decision on December 12, 1985, On that day in the conference of the Panel after oral argument and submission, the preparation of this opinion and judgment was assigned by the Panel to Judge

The order of this Court, entered April 18, 1985 in TECA No. 9–87, granting the petition of the appellants City of Long Beach and State of California to appeal under § 1292(b) from a separate interlocutory partial summary judgment, entered July 19, 1984, by the United States District Court for the Central District of California, is reported in 761 F.2d at 712. In a separate order of April 18, 1985 in TECA No. 9–88, the petition of the appellants for permission to appeal from a second interlocutory partial summary judgment entered December 17, 1984, by the same District Court was denied. 761 F.2d at 712.

## BASIC FACTS

Since December 18, 1975, more than ten years ago, the claims for relief of the appellants against appellees and others have been pending on a *Second Amended Complaint* in three counts, a copy of which (with caption and names of counsel omitted) is attached hereto as Addendum No. 1. It is noted that Count One of the Second Amended Complaint is a claim for relief under federal antitrust statutes. Count Two is a pendent claim for relief under California state antitrust law, Sections 16,-700–16,758 of the Business and Professions Code, based on the same factual allegations made in Count One. Count Three is a pendent claim for relief under California state law based on an alleged breach of contract.

These antitrust actions and the contract action against the appellees herein, and others, ultimately became a part of the multi-district litigation pending in the United States District Court of the Central District of California entitled *In Re: Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, M.D.L. No. 150* (J.P.M.L.1976) 419 F.Supp. 712. In that multidistrict litigation, the transferee District Court in 1984 by separate orders of

---

McNichols. Since that time, Judge McNichols died on December 25, 1985. Before his death, Judge McNichols participated and concurred fully in this decision, so reargument and appointment of a successor Judge to the Panel is unnecessary at this time.

July 19, 1984, and December 17, 1984, entered the two partial summary judgments against appellants on issues that appellants contend are within the exclusive appellate jurisdiction of this Temporary Emergency Court of Appeals of the United States (TECA). As stated in the prior opinion of this Court in 761 F.2d at 711, the District Court rendered those two separate partial summary judgments entered an opinion and order in writing, under § 1292(b), that an interlocutory appeal from the two summary judgment decisions involved controlling questions of law on which there were substantial grounds for difference of opinions, and that an immediate interlocutory appeal under § 1292(b) from the two decisions granting the summary judgments, may materially advance the ultimate termination of the litigation. Joint Appendix (J.A.) 120. Appellants filed simultaneous petitions for interlocutory appeals under § 1292(b) in the Ninth Circuit Court of Appeals and in this Court (TECA). Thereafter the Ninth Circuit Court of Appeals denied without prejudice the petitions for interlocutory appeals to the Ninth Circuit Court of Appeals under § 1292(b) on the grounds of lack of subject matter jurisdiction in that the interlocutory appeals appeared to be within the exclusive jurisdiction of this Court.

### Recent Factual Developments

After we permitted this interlocutory appeal in TECA No. 9–87, there have been judicial and factual developments in the District Court in the underlying actions that have caused us to decide, among other things, to dismiss this interlocutory appeal in TECA No. 9–87 without prejudice to the factual and legal contentions of the parties on any of the issues involved.

§ 1292(b) provides expressly "That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals, or a judge thereof shall so order." In the absence of such an order staying proceedings, the District Court continued the pretrial processing of the actions of the appellants, the City of Long Beach and State of California, as a part of M.D.L. 150, *supra.* In the course of that continued pretrial processing, on June 19, 1985, the District Court entered a partial *Summary Judgment* against appellants on Count One and Count Two. J.A. 3740–3741. This summary judgment was followed three months later, on September 19, 1985, by entry by the District Court of a *Memorandum of Decision Granting Defendants Summary Judgment Motions Regarding Antitrust Claims* (Memorandum). J.A. 3742–3785.

In this Memorandum, the District Court directed entry of a final judgment on Count One and Count Two under Rule 54(a) F.R. Civ.P.J.A. 3784. No further judgment entry appears of record. From the presumed final judgment each of the appellants attempted to appeal, although all counsel agree that appellants thereafter filed a post judgment motion to alter, amend and reconsider the judgment dismissing Counts One and Two, pursuant to Rule 59(e), F.R. Civ.P. These attempted appeals from the presumed final partial summary judgment on Counts One and Two were docketed as TECA Nos. 9–93 and 9–94, and were consolidated by this Court with this appeal in TECA No. 9–87. However, appellants and appellees at a formal prehearing conference on December 12, 1985, preceding oral argument before the Panel, agreed, for different reasons that the appeals in Nos. 9–93 and 9–94 were not effective. The record on the material part of this prehearing conference is quoted in the opinion and judgment, hereinafter, dismissing without prejudice the consolidated appeals in Nos. 9–93 and 9–94 under § 1291, Title 28 U.S.C. (§ 1291). The opinion and judgment of this Court dismissing the appeals without prejudice in Nos. 9–93 and 9–94 follows this opinion and judgment in No. 9–87.

### Reasons for Dismissal Without Prejudice

■ After the granting of an interlocutory appeal under § 1292(b), the entry of a judgment final in form, purporting to settle the issues in controversy, does not auto-

matically render the interlocutory appeal moot and require its dismissal. Under these circumstances, the dismissal of the interlocutory appeal, permitted earlier, remains in the judicial discretion of this Court. 2 *Federal Procedure*, Lawyers Edition, § 3.625, pages 595–596; 32 Am.Jur.2d *Federal Practice and Procedure*, § 339, pages 830–831; *Nixon v. Fitzgerald*, 457 U.S. 731, 102 S.Ct. 2690, 73 L.Ed.2d 349 (1982), Point II B of which involves pending interlocutory appeals under the collateral order doctrine.

■ Because of the *Memorandum, supra,* of the District Court of September 19, 1985 (J.A. 3742) (entered while this interlocutory appeal was pending) supporting the prior entry of summary judgment for all defendants on the antitrust claims of appellants, directed entry of final judgment under Rule 54(b) F.R.Civ.P. (J.A. 3784), the earlier partial judgment of June 19, 1985, became appealable, according to appellants, as a final judgment, on disposition of post-judgment motions under Rule 59(e) F.R. Civ.P. The entry of the Memorandum, *supra,* including the order under Rule 54(b) has caused us, in our discretion, to decide to dismiss this interlocutory appeal without prejudice, because an appeal of a final judgment on all material issues under Counts One and Two of the Amended Complaint, including those in this interlocutory appeal, is possible and perhaps probable. 2 *Federal Procedure*, L.Ed. § 3.364; *Case v. St. Paul Fire and Marine Insurance Company* (C.A.5 1972), 456 F.2d 252–53.

Because the Memorandum, *supra,* of September 19, 1985, filed after the allowance of this interlocutory appeal No. 9–87 arguably introduced principal and subordinate factual and legal issues in addition to those presented for review on these appeals, judicial efficiency and economy will be promoted by dismissing this interlocutory appeal in favor of possible appeal or appeals from the final judgment under Rule 54(b) F.R.Civ.P. and § 1291, Title 28 U.S.C. The additional principal and subordinate factual and legal issues introduced by the Memorandum, *supra,* are described

in part in the memorandum of appellants in support of its post judgment motion in the District Court under Rule 59(e) F.R.Civ.P.

■ Further because the changed circumstances occurring after the order of this Court permitting the interlocutory appeal, support a current finding that the interlocutory appeal will not materially advance the termination of the litigation, the interlocutory appeal should be dismissed without prejudice. *United States v. Bear Marine Services* (C.A.5 1983), 696 F.2d 1117, and cases therein cited; 2 *Federal Procedure*, L.Ed. *supra,* § 3.364. It is therefore

ORDERED AND ADJUDGED that this interlocutory appeal in TECA No. 9–87 be, and it is hereby dismissed without prejudice to any of the factual and legal contentions in issue in this appeal.

### APPEALS IN NOS. 9–93 and 9–94
### JUDGMENT DISMISSING APPEALS WITHOUT PREJUDICE

■ The facts stated hereinbefore concerning Appeal No. 9–87 are considered with the statement of the following additional facts and details material to Appeals No. 9–93 and 9–94.

### ADDITIONAL FACTS AND DETAILS

The material orders and judgments of the District Court entered after the granting of this interlocutory appeal in TECA No. 9–87 are as follows:

1. A partial Summary Judgment for defendants, the appellees herein, entered by the District Court on June 19, 1985. J.A. 3741.

2. *Memorandum of Decision Granting Defendants' Summary Judgment Motions Regarding Antitrust Claims,* entered September 19, 1985, J.A. 3742–3785. This Memorandum relates to the partial Summary Judgment of June 19, 1985, and finds and concludes (a) that the claim for damages for the only period not covered by the earlier partial summary judgments (of July 19 and December 17, 1984) is precluded by the Government's

Mandatory Oil Import Program. J.A. 3743. As an alternative reason for granting summary judgment, it concluded that the plaintiffs (appellants) do not have any evidence to make a triable issue on the allegations of existence of an actionable conspiracy. J.A. 3749–3750. In support of this conclusion, the District Court stated and reviewed in detail its findings on the evidentiary contentions of appellants. J.A. 3750–3784. It concluded by entering an order pursuant to 54(b) F.R.Civ.P. directing immediate entry of a final judgment (immediately appealable except for post judgment motions). J.A. 3784. This order under Rule 54(b) may be related to the partial Summary Judgment on Counts One and Two entered by the District Court on June 19, 1985. J.A. 3740. No new partial summary judgment appears of record on or about September 19, 1985, despite the direction of the memorandum of decision of September 19, 1985. J.A. 3784.

3. Thereafter, appellants, plaintiffs below, filed pursuant to Rule 59(e) F.R. Civ.P. a motion to alter, amend and reconsider the summary judgment on Count One and Count Two of the Second Amended Complaint. Agreement of counsel at prehearing conference before the Panel on December 12, 1985, quoted hereinafter.

4. Appellants filed Notices of Appeal to the Ninth Circuit Court of Appeals and to this Court under § 1291, Title 28 U.S.C., from the partial summary judgment on Counts One and Two, entered June 19, 1985. These appeals were agreed by counsel to be ineffective, for different reasons, at the prehearing conference in this Court held before oral argument on December 12, 1985. On February 14, 1986, the Ninth Circuit Court of Appeals dismissed the appeals to that Court because of the pending postjudgment motions under Rule 59(e) F.R.Civ.P. Copy of order submitted by counsel for appellees with letter of February 27, 1986, pursuant to TECA Rule 21(k) of this Court.

*Agreement of Counsel at Prehearing Conference*

On December 12, 1985, immediately preceding oral argument in these consolidated appeals, this Court held a prehearing conference under inherent powers and under Rule 33 F.R.App.P. At this conference the Court made inquiry of counsel concerning the record in the District Court and the appealability of the partial Summary Judgment of the District Court at the time the Notices of Appeal were filed in this Court in Nos. 9–93 and 9–94. A part of the record discloses the following inquiries by the Presiding Judge of the Panel and the following oral responses of counsel for Appellants and Appellees:

"Judge McNichols, Presiding: We have to consider today three appeals, Appeals 9–87, which was an interlocutory appeal which we granted on some questions, and we then joined Appeals 9–93 and –94 as a result of Judge Gray's Memorandum of Decision of September 1985 when he held that the mandatory oil import program was the effective reason for the failure to raise prices and that it wasn't caused by a conspiracy. And he also held then that—and he was wrong about that, if I understood it the way he put it, and if he was wrong about that then there wasn't any conspiracy anyway.

"And we have been advised, we have some information that has been put into our files that a timely motion to reconsider Judge Gray's decision was made which would probably deprive this Court jurisdiction over 93 and 94, assuming that there was a timely 59(e) rule made, and we don't know whether there was or not and that is one of the things we want to inquire about.

"So let me ask you, is there an agreement as to whether or not there was a timely 59(e) motion made?

"MR. HOECKER: Your Honor, on behalf of the defendants, we believe either one of two circumstances occurred. Either Judge Gray entered a final judgment on September 19th and there was a

timely rule 59(e) motion filed, or alternatively the position that the defendants have taken in their own rule 59(e) motion is that there is not yet a rule 54(b) final judgment, because Judge Gray in fact put in two separate pieces of paper, one a summary judgment back in June and the other a September 19th direction to the clerk to enter final judgment, and the defendants believe that those two things should be put in one piece of paper and then you will have the rule 54(b) judgment and at that point—and that hasn't occurred—that they should be bringing a section 1291 appeal.

"So in either of those circumstances there is not a basis for appeal in Nos. 9–93 and 9–94.

"JUDGE McNICHOLS: So counsel are in agreement then that, whatever the mechanics of the matter are, that as of now there wouldn't be jurisdiction to consider 93 and 94 either in this Court or the Court of Appeals?

"MR. HOECKER: I believe that is correct, Your Honor.

"MR. REDCAY: Yes, Your Honor.

"JUDGE McNICHOLS: All right, so then we only have today consideration of 9–87 which has to do with the three areas that we agreed upon. We would like to ask you then if appellants would take it upon themselves to augment the record with the showing of matters that have been filed and the sequence in which they have been filed so we can have it before us specifically.

"I think we are prepared to say that, since there is agreement that only 9–87 will be heard today."

Because of the filing of the postjudgment motion under Rule 59(e) by appellants to alter, amend and reconsider the partial judgment and supporting memorandum of decision, the appeals in Nos. 9–93 and 9–94 are not timely. Therefore, those appeals will be dismissed without prejudice. 2 *Federal Practice*, L.Ed., *supra*, § 3.310 and § 3.469 and cases therein cited.

If one or more appeals are filed after the District Court acts on the postjudgment motion, the appellants or other parties may move for an order permitting use of the expensive record and briefs filed in these appeals. It is therefore

ORDERED AND ADJUDGED that for the foregoing reasons, the appeals in Nos. 9–93 and 9–94 be and they are hereby dismissed without prejudice.

*ADDENDUM NO. 1*

*SECOND AMENDED COMPLAINT*

The above-named plaintiffs file this complaint against the above-named defendants and, demanding trial by jury, complain and allege as follows:

*COUNT ONE*

I

*JURISDICTION AND VENUE*

1. This count of the complaint is filed and these proceedings are instituted by the above-named plaintiffs against the above-named defendants under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26) to secure damages and injunctive relief from the above-named defendants for their violations of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2).

2. The defendants maintain an office, transact business, have an agent, and may be found within the Central District of California. The interstate trade and commerce involved and affected by the alleged violations of the antitrust laws is carried on in material part within the Central District of California.

II

*THE PARTIES*

A. *Plaintiffs.*

3. The City of Long Beach is the owner, upon certain trusts and conditions, of the tidelands and submerged lands, both filled and unfilled, conveyed to it by the State of California by Chapter 676, Statutes of 1911, Chapter 102, Statutes of 1925, and

Chapter 158, Statutes of 1935, hereinafter called the Long Beach Tidelands. Within said Long Beach Tidelands lies Tract 1 of the Long Beach Unit, Wilmington Oil Field, California, a tract of land which, together with certain other tracts of land within the city limits of Long Beach, is committed to a unitized oil and gas production operation in conformance with the provisions of Chapter 138, Statutes of 1964 (First Extraordinary Session), hereinafter called Chapter 138, and the other laws of the State of California.

4. The State of California is the beneficial owner of the above-described lands held in trust by the City of Long Beach pursuant to said statutes.

### B. *Defendants.*

5. Defendant Standard Oil Company of California (hereinafter "Socal") is a corporation organized and doing business under the laws of the State of Delaware with its principal offices and place of doing business at 225 Bush Street, San Francisco, California 94104. Socal is registered as a foreign corporation, doing business with the State of California and is a producer, purchaser, transporter, refiner and marketer of crude oil and refined oil products within that State, either directly or through subsidiary corporations owned or controlled by it. Socal is the eighth largest industrial corporation in the United States in terms of assets and the twelfth largest industrial corporation in the world. Reference herein to Socal shall be taken as referring to any of its owned or controlled subsidiaries.

6. Defendant Texaco, Inc. (hereinafter "Texaco"), is a corporation organized and existing under the laws of the State of Delaware, with its principal office and place of business at 135 East 42nd Street, New York, New York 10017. Texaco is registered as a foreign corporation within the State of California, maintains an office within that State at 3350 Wilshire Boulevard, Los Angeles, California 90010, and is doing business within that State as a producer, purchaser, transporter, refiner and marketer of crude oil and refined oil prod-ucts. Texaco is the third largest industrial corporation in the United States in terms of assets and the seventh largest in the world.

7. Defendant Exxon Corporation (hereinafter "Exxon") is a corporation organized and existing under the laws of the State of New Jersey, with its principal office and place of business at 1251 Avenue of the Americas, New York, New York 10020. Defendant Exxon is doing business within the State of California, either directly or through its wholly-owned and controlled subsidiary, Exxon USA, as a producer, purchaser, transporter, refiner and marketer of crude oil and refined oil products and is (either directly or through such subsidiary) registered as a foreign corporation within that State. Reference herein to Exxon shall be taken to refer to that subsidiary corporation or any other subsidiary or affiliated corporation wholly owned or controlled by it. Exxon is the largest industrial corporation in the United States in terms of assets and is the largest industrial corporation in the world.

8. Defendant Union Oil Company of California (hereinafter "Union") is a corporation organized and existing under the laws of the State of California, with its principal office and place of doing business at Union Oil Center, Los Angeles, California 90017. Union is doing business as a producer, purchaser, transporter, refiner and marketer of crude oil and refined oil products within the State of California. Union is the thirtieth largest industrial corporation in the United States in terms of assets and is the seventy-sixth largest industrial corporation in the world.

9. Defendant Mobil Oil Corporation (hereinafter "Mobil") is a corporation organized and existing under the laws of the State of New York, with its principal office and place of business at 150 East 42nd Street, New York, New York 10017. Mobil is registered as a foreign corporation doing business in the State of California and is a producer, purchaser, transporter, refiner and marketer of crude oil and refined oil products within that State. Mobil is the fifth largest industrial corporation in the

United States in terms of assets and the eighth largest industrial corporation in the world.

10. Defendant Shell Oil Company (hereinafter "Shell") is a corporation organized and existing under the laws of the State of Delaware, with its principal office and place of business at One Shell Plaza, Houston, Texas 77001, and is a subsidiary principally owned and controlled by the Royal Dutch Shell Group, a group of interrelated and commonly controlled corporations organized under the laws of the Netherlands, the United Kingdom, and various other foreign countries. Shell is registered as a foreign corporation doing business within the State of California and is a producer, purchaser, transporter, refiner and marketer of crude oil and refined oil products within that State. Shell is the sixteenth largest industrial corporation in the United States in terms of assets, and the Royal Dutch Shell Group by which it is owned and controlled is the second largest industrial company in the world. Reference herein to Shell shall be taken, where appropriate, as referring to its parent, controlling company and to any other owned or controlled subsidiary of such parent company.

11. Defendant Atlantic Richfield Company (hereinafter "Arco") is a corporation organized and existing under the laws of the State of Pennsylvania, with its principal office and place of doing business at 515 South Flower Street, Los Angeles, California 90071. Arco is registered as a foreign corporation doing business within the State of California and is a producer, purchaser, transporter, refiner and marketer of crude oil and refined oil products within that State. Arco is the fifteenth largest industrial corporation in the United States in terms of assets and the thirty-first largest industrial corporation in the world.

12. Defendant Thums Long Beach Company (hereinafter "Thums") is a corporation organized and existing under the laws of the State of Delaware, with its principal office and place of business at 840 Van-Camp Street, Long Beach, California 90801.

Thums was formed and is wholly owned by defendants, Texaco, Exxon, Union, Mobil and Shell. Thums is engaged in, *inter alia,* the business of exploration, development, production and distribution of crude oil in the Long Beach Unit of the East Wilmington Field.

13. Defendants Texaco, Inc., Exxon Corporation, Union Oil Company, Mobil Oil Corporation and Shell Oil Company jointly constitute the Field Contractor of the Long Beach Unit pursuant to the Contractor's Agreement, Long Beach Unit, Wilmington Oil Field, California, hereinafter called the Contractor's Agreement, said defendants having joined together in submitting a bid for the Field Contractor's interest under the Contractor's Agreement and, as highest bidder, having thereby been awarded the Field Contractor's interest by Long Beach, said defendants having jointly executed the Contractor's Agreement as Field Contractor, said Contractor's Agreement being approved by the State Lands Commission pursuant to Chapter 138. As Field Contractor under the Contractor's Agreement, said defendants are entitled and obligated to take an undivided 80 percent of the oil and gas produced from the Long Beach Unit that is allocated to Long Beach's Tract 1 of the Long Beach Unit. As Field Contractor, said defendants, acting under the direction and control of Long Beach, have the exclusive right, responsibility and obligation to conduct day-to-day operations for the exploration, development and operation of all parcels, including Tract 1, committed to the Long Beach Unit for the production of oil and gas. As Field Contractor, said defendants are obligated to make payments to the City of a percentage of the revenues derived from the production and sale of the oil and wet gas products produced from the Long Beach Unit and allocated Tract 1, after deducting certain expenses for Long Beach Unit operations allocated to Tract 1. The moneys so payable to Long Beach are directly and proportionally affected by the value of the oil allocated to Tract 1 when said oil is taken by defendants as Field Contractor. The computed value of said oil has and

continues to be unlawfully depressed and diminished by the acts of defendants as hereinafter described, causing damage to Long Beach and to the State Lands Commission for and on behalf of the State of California, which Commission is entitled, pursuant to the provisions of Chapter 138, to receive a major proportion of the moneys due Long Beach under the Contractor's Agreement.

Defendants Standard Oil Company of California and Atlantic Richfield Company jointly constitute the Non-operating Contractor with the five percent, the two and one-half percent, the one and one-half percent and the one percent Contractor's Percentage pursuant to the Contractor's Agreement, said defendants having joined together in submitting a bid for each of said several percentage interests under the Contractor's Agreement and, as highest bidder in each instance, having thereby been awarded each such Contractor's Percentage interest, said defendants having jointly executed the Contractor's Agreement as Non-operating Contractor for each such Contractor's Percentage interest, said Contractor's Agreement being approved by the State Lands Commission pursuant to Chapter 138. As Nonoperating Contractor, said defendants are entitled and obligated to take the undivided five percent, two and one-half percent, one and one-half percent and one percent Contractor's Percentage of the oil and gas produced from the Long Beach Unit that is allocated to Long Beach's Tract 1 of the Long Beach Unit. As Nonoperating Contractor, said defendants are obligated to make payment to Long Beach of a percentage of the revenues derived from the production and sale of the oil and wet gas products produced from the Long Beach Unit and allocated to Tract 1, after deducting a share of certain expenses for Long Beach Unit operations allocated to Tract 1. The moneys so payable to Long Beach are directly and proportionally affected by the value of the oil allocated to Tract 1 when said oil is taken by said defendants as Nonoperating Contractor. The computed value of the said oil has and continues to be unlawfully depressed by the acts of defendants as hereinafter described, causing damage to Long Beach and to the State Lands Commission for and on behalf of the State of California, which Commission is entitled, pursuant to the provisions of Chapter 138, to receive a major proportion of the moneys due Long Beach under the terms of the Contractor's Agreement.

Nondefendants Pauley Petroleum, Inc., and Allied Chemical Corporation jointly constitute the Nonoperating Contractor with the ten percent Contractor's Percentage pursuant to the Contractor's Agreement. As Nonoperating Contractor, said nondefendants are entitled and obligated to take the undivided ten percent interest of the oil and gas produced from the Long Beach Unit that is allocated to Long Beach's Tract 1 of the Long Beach Unit. As Nonoperating Contractor, said companies are obligated to make payment to Long Beach of a percentage of the revenues derived from the production and sale of the oil and wet gas products produced from the Long Beach Unit and allocated to Tract 1, after deducting a share of certain expenses for Long Beach Unit operations allocated to Tract 1. The moneys so payable to Long Beach are directly and proportionally affected by the value of the oil allocated to Tract 1 when said oil is taken by said companies as Nonoperating Contractor. The computed value of said oil has and continues to be unlawfully depressed by the acts of companies as hereinafter described, causing damage to Long Beach and to the State Lands Commission for and on behalf of the State of California, which Commission is entitled, pursuant to the provisions of Chapter 138, to receive a major proportion of the moneys due Long Beach under the terms of the Contractor's Agreement.

## III

## NATURE OF TRADE AND COMMERCE

14. Trade and commerce in petroleum is a significant part of the trade and com-

merce of the State of California. Such trade and commerce includes the production, purchase, sale and transportation of supplied liquid raw materials for refinery processing, including crude oil and natural gas liquids; the processing of such raw materials in refinery facilities to provide finished products, including gasoline and various types of distillate and residual fuel oil; the transportation of such finished products to primary supply terminals for sale at various levels of further wholesale and retail trade.

15. The production of crude petroleum and natural gas liquids is the beginning of the flow of trade and commerce in petroleum. Crude oil is produced from wells penetrating natural deposits of such materials, in regular flow under natural pressures, pressures induced by injection of other fluids, or are extracted by pumping.

16. Once the crude oil has been produced, it is then transported through gathering lines and trunk pipelines, virtually all of which are controlled by defendants, to refineries where the crude oil is refined into gasoline and other finished petroleum products. These finished products are then transported by pipeline and tank trucks to retail outlets within and outside the State of California.

17. During the period covered by this complaint, there has been a substantial and continuous flow of crude oil and refined petroleum products, produced and manufactured in the State of California, across state lines in interstate commerce. There has also been a continuous and regular flow in interstate and foreign commerce of crude oil from sources outside the United States through refineries in the State of California. Operations at the various levels of trade and commerce in petroleum either are directly or indirectly in, or substantially affect, interstate commerce.

IV

*OFFENSES CHARGED*

18. Beginning at a time, the precise date of which is unknown to plaintiffs, and continuing up to and including the date of this complaint, the defendants have been engaged in a combination and conspiracy, the purpose of which was and is to artificially fix and stabilize the prices for crude oil at unreasonably low and artificial levels and to restrain trade and commerce and to monopolize the exploration, development, production, distribution, and sale of crude oil from the tidelands and submerged lands which the City of Long Beach owns or over which it has exclusive trust jurisdiction in violation of Sections 1 and 2 of the Sherman Act (15 U.S.C. §§ 1, 2). As part of the aforesaid combination and conspiracy to fix prices, restrain trade and to monopolize, the defendants have agreed and have implemented, *inter alia,* the following acts and practices:

(a) fixing and maintaining of uniform and noncompetitive prices to be paid by them for crude oil purchased (i) by causing one or more of them to post in each oil field, agreed upon prices for the various grades of crude oil, and (ii) by causing each defendant to follow the prices posted by the designated defendant in each of the oil fields in which the defendants purchased crude oil;

(b) refusing to bid or pay for crude oil in each field at prices above the posted price in each field;

(c) pooling their respective crude oil transportation facilities for the reciprocal use of each of them and refusing, by economic discrimination, the use of their pipeline transportation facilities serving fields distant from refineries to independent producers and owners of crude oil at said fields, thus requiring said independent producers and owners to sell their crude oil to defendants at prices and on terms fixed by them, or to pay transportation costs for said crude oil much higher than the transportation costs of defendants for crude oil produced in said fields;

(d) making reciprocal exchanges of crude oil among themselves;

(e) refusing to sell crude oil to independent refiners and/or marketers;

(f) limiting the supply of crude oil available to independent refiners and/or marketers;

(g) making joint, rigged and collusive bids for the purchase of crude oil;

(h) entering into a series of joint venture agreements for the purpose of bidding upon, purchasing and developing crude oil and for the transportation of crude oil through terminals and pipelines; and

(i) taking steps to prevent independent refiners and/or marketers from securing crude tidelands oil through the competitive bidding process.

## V

### *INJURY TO PLAINTIFFS*

19. As a direct and proximate result of the unlawful conduct hereinbefore alleged:

(a) the City of Long Beach has been unable to fully issue and administer the leases or contracts for the exploration, development and production of crude oil from the tidelands and submerged lands which the City of Long Beach owns or over which it has exclusive trust jurisdiction;

(b) plaintiffs have sustained losses in revenues arising out of the leases or contracts for the exploration, development and production of crude oil in the above-referenced lands; and

(c) plaintiffs are threatened with substantial and irreparable injury if the defendants' unlawful activities continue.

20. Plaintiffs have not yet ascertained the price dollar amount of their damages; however, they believe such damages to be substantially in excess of One Hundred Million Dollars ($100,000,000). When such amounts are ascertained, plaintiffs will ask leave of Court to amend the complaint and insert said amounts herein.

### COUNT TWO

#### I

### *JURISDICTION AND VENUE*

21. Count Two of this complaint is filed by plaintiffs under Sections 16,700–16,758 of the Business and Professions Code, State of California (Cartwright Act), as a claim pendent to Count One of this complaint to secure damages and injunctive relief from the named defendants pursuant to Section 16,750 of the Business and Professions Code, as hereinafter alleged.

22. Plaintiffs repeat and reallege paragraph 2 of Count One of this complaint with the same force and effect as though said paragraph had been set forth in full herein as part of Count Two.

## II

### *THE PARTIES*

23. Plaintiffs repeat and reallege paragraphs 3, 4, 5, 6, 7, 8, 9, 10, 11, 12 and 13 of Count One of this complaint with the same force and effect as though each of said paragraphs had been set forth in full herein as part of Count Two.

## III

### *TRADE AND COMMERCE*

24. Plaintiffs repeat and reallege paragraphs 14, 15, 16 and 17 of Count One of this complaint with the same force and effect as though each of said paragraphs had been set forth in full herein as part of Count Two.

## IV

### *OFFENSES CHARGED*

25. Plaintiffs repeat and reallege paragraph 18 of Count One of this complaint with the same force and effect as though said paragraph had been set forth in full herein as part of Count Two.

## V

### *INJURY TO PLAINTIFFS*

26. Plaintiffs repeat and reallege paragraphs 19 and 20 of Count One of this complaint with the same force and effect as though said paragraphs had been set forth in full herein as part of Count Two.

## COUNT THREE

### I

### JURISDICTION AND VENUE

27.  Count Three of this complaint is filed by the City of Long Beach as a claim pendent to Count One to secure damages, accounting and injunctive relief by reason of the defendants' failure to pay the true amounts as required under the below-referenced contracts.

28.  Plaintiff the City of Long Beach repeats and realleges paragraph 2 of Count One of this complaint with the same force and effect as though said paragraph had been set forth in full herein as part of Count Three.

### II

### THE PARTIES

29.  Plaintiff the City of Long Beach repeats and realleges paragraphs 3, 5, 6, 7, 8, 9, 10, 11, 12 and 13 of Count One of this complaint with the same force and effect as though each of said paragraphs had been set forth in full herein as part of Count Three.

30.  On or about March 2, 1965, the City of Long Beach entered into a written contract, Contractors' Agreement, Long Beach Unit, Wilmington Oil Field, California, recorded in Book M 1796, starting at page 485, on March 10, 1965, in the Los Angeles County Recorder's Office. Said contract (hereinafter referred to as "Contractors' Agreement") incorporated by reference certain definitions from other contracts, known as "Unit Agreement, Long Beach Unit, Wilmington Oil Field," recorded in Book M 1799, starting at page 559, on or about March 12, 1965, and "Unit Operating Agreement, Long Beach Unit, Wilmington Oil Field, California," recorded in Book M 1799, starting at page 801, on or about March 12, 1965.

31.  By terms of the contracts, the City of Long Beach agreed to give the "Field Contractors," Humble Oil & Refining Company (the predecessor in interest to Exxon), Shell Oil Company, Socony, Mobil Oil Company, Inc. (the predecessor in interest to Mobil), Texaco, Inc., and Union the exclusive right to conduct exploration, development and operation of the contract lands for oil and gas and gave to all defendants, including Socal and Arco and certain nondefendant companies, Allied Chemical Corporation and Pauley Petroleum, Inc., the exclusive right to take all of the oil allocated to Tract 1 of the Long Beach Unit (being approximately ninety percent of the production from the subject land of the contract) according to a formula set in the contract. In return for these rights, defendants promised to pay a given percentage of their net profits as set forth in their bids to the City of Long Beach. Among the factors credited to the contractors' net profit account pursuant to Article 4(a)(1)(a), which is used as a base for computing net profits, is the total value of oil allocated to each contractor. All defendants in this action, with the exception of Thums, are party defendants to this count.

32.  Pursuant to Chapter 138, California Statutes of 1964, First Extraordinary Session, the payments to the City of Long Beach were to be divided between the City and the State of California pursuant to a schedule set forth therein.

33.  At no time did any party to the contract rescind it. The City of Long Beach has performed the contract in that it has given the aforementioned rights to the defendants herein and has performed each and every act required to be performed by it, according to the terms and conditions of the contract.

34.  During the entire life to date of the Contractors' Agreement, defendants have been in continuous and material violation of said contract in that they have failed to credit their net profits account with the full value of oil allocated to them. Defendants have, among other things, acquired oil in the field from each other and/or other persons by exchange and/or sale at a consideration per barrel higher than the valuation for such oil calculated in accordance with Section 9(b) of the Thums contract. De-

spite these acquisitions, each and every defendant has failed to adjust the amount credited to the net profit account as required by Section 9(c) of the Thums contract.

35. As a result of defendants' breach of the contract, plaintiff has not been fully compensated according to the provisions of the contract for the oil taken from the subject lands by defendant oil companies to its damage in a sum as yet unascertained, but believed by plaintiff to be substantially in excess of One Hundred Million Dollars ($100,000,000). When such amounts are ascertained, plaintiff will ask leave of Court to amend its complaint and insert said amounts herein.

WHEREFORE, plaintiffs pray that this Court adjudge and decree as follows:

1. That defendants have combined and conspired to fix prices and to unreasonably restrain and monopolize the trade and commerce hereinbefore described in violation of Sections 1 and 2 of the Sherman Act;

2. That judgment be entered against the defendants for treble the amount of damages suffered by plaintiffs as provided under Section 4 of the Clayton Act;

3. That plaintiffs be awarded reasonable attorneys' fees and costs of litigation as required by Section 4 of the Clayton Act;

4. That judgment be entered against the defendants for treble the amount of damages suffered by plaintiffs as provided in Section 16,750 of the California Business and Professions Code, and that plaintiffs be awarded attorneys' fees and costs of litigation;

5. That judgment be entered in favor of plaintiff the City of Long Beach against the defendants for the amount of damages suffered by plaintiff the City of Long Beach as a result of the defendants' breaches of contract;

6. That defendants be permanently enjoined and restrained from each and every one of the unlawful practices alleged in plaintiffs' complaint, and that appropriate equitable relief be entered to dissipate the effects of the unlawful practices; and

7. That plaintiffs have such other and further relief as the Court may deem proper.