WELLVEN, INC., et al.,
Plaintiffs-Appellants,

v.

GULF OIL CORPORATION,
Defendant-Appellee.

Nos. 3–35, 3–36.

Temporary Emergency Court of Appeals.

Argued Sept. 22, 1983.

Decided Feb. 10, 1984.

Rehearing and Rehearing En Banc
Denied March 20, 1984.

As Amended June 21, 1984.

Benjamin E. Zuckerman, Norristown, Pa., with whom James W. Hennessey of Sherr, Moses & Zuckerman, Norristown, Pa., were on the brief, for plaintiffs-appellants.

Bradley Ford Stuebing, Houston, Tex. and Carole B. Dotson, Bala Cynwyd, Pa., were on the brief, for defendant-appellee.

Before GRANT, BECKER and PECK, Judges.

JOHN W. PECK and WILLIAM H. BECKER, Judges.

Owners and operators of eighteen Philadelphia area retail gasoline stations (collectively known as Wellven, Inc.) filed an action authorized by § 210(a) of the Economic Stabilization Act of 1970 (ESA), 12 U.S.C. § 1904 note, as incorporated by the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. § 751 *et seq.*, against the Gulf Oil Corporation (Gulf) for recovery of overcharges on the sale of gasoline by Gulf to Wellven, Inc. between February 1, 1979 and January 28, 1981. The dispute arose when Gulf unilaterally terminated certain discounts in the price of gasoline which Wellven, Inc. had previously received. In its complaint Wellven, Inc. alleged that the unilateral termination had resulted in prices charged by Gulf in violation of the applicable federal regulations fixing price ceilings on the sale of petroleum products. Alleging in Count II of its complaint that Gulf's violations were willful and intentional, Wellven, Inc. prayed for treble damages and attorney's fees.[1] The District Court, sitting with a jury, agreed that Gulf had illegally overcharged Wellven, Inc., but failed expressly to find the violation willful and intentional (though the Court and jury in substance so found) and denied Wellven, Inc.'s request for treble damages and attorney's fees. This appeal followed.

### Background Facts

Beginning in 1972, Wellven, Inc. began constructing and operating a series of small retail gasoline stations in and around metropolitan Philadelphia. By the spring of 1973, Wellven, Inc. had opened two stations. Thereafter, between May 15, 1973 and January 31, 1979, sixteen additional stations, operating similarly under the guidance of Wellven, Inc. management, opened for business. Each station concentrated exclusively on selling gasoline at high volume disregarding other concomitant services. As a result, each station sold more than one million gallons of gasoline per year.

Each station, though independently owned, purchased gasoline from Gulf by contract. Contracts generally were renewed annually, though several apparently ran for longer periods. The agreements reached between the individual gasoline station dealer and Gulf provided for a discount in price of 2.5 to 3 cents per gallon from the standard tank wagon price Gulf charged its regular contract dealers. After entering into each contract, Gulf insisted that the Wellven, Inc. dealer sign an affidavit stating that the contracted discount had

---

1. Wellven, Inc. also alleged in Count III of its complaint that Gulf had violated the Robinson-Patman Act, 15 U.S.C. §§ 13a, 15 & 26, through discriminatory pricing. All price discrimination issues in Count III were removed from the case by stipulation before the trial. Volume I, Record On Appeal (Rec.) Tab D, page 2.

been granted in response to an offer of a competitor with similar provisions, regardless of whether such an offer by a competitor actually was made.

On February 1, 1979, Gulf unilaterally announced that discounts previously made would be discontinued. In a letter dated April 20, 1979, Wellven, Inc. presented Gulf with a claim for refund equal to the amount of discounts which it argued were due. Shortly thereafter, on June 13, 1979, Wellven, Inc. brought this suit seeking repayment of the overcharge pursuant to § 210(a) and three times the amount of the overcharge and attorney's fees pursuant to § 210(b).[2]

Wellven, Inc. contended that Gulf had unreasonably classified it as a contract dealer purchasing gasoline at the full dealer tank wagon price despite the fact that Gulf had classified other similar discount recipients separately. In so doing, Wellven, Inc. urged, Gulf had violated EPAA and federal mandatory petroleum price regulations, 10 C.F.R. § 212 *et seq.*, which require refiners to classify customers for purposes of pricing in a manner similar to its classification of its customers on May 15, 1973, the date designated as a reference point for applying federal price controls on petroleum products. Since it therefore should have been and was entitled to be included as a member of Gulf's discount class of purchasers, Wellven, Inc. asserted, withdrawal of previously granted discounts constituted an overcharge in violation of the mandatory price regulations.

At the close of Wellven, Inc.'s case, Gulf moved for a directed verdict, arguing among other things that Wellven, Inc. had failed to comply with the proviso of § 210(b) of the ESA mandating that Wellven, Inc. as a condition precedent to a suit for recovery of overcharges present Gulf with a demand for a refund ninety days prior to instituting suit. The District Judge denied the motion, ruling that Gulf had, by failing to raise the matter in its pleadings, waived the defense.

Gulf contended primarily that each discount was granted in response to a competitive offer described in affidavits in evidence and was terminable by Gulf. Federal Energy Administration (FEA) Ruling 1975-2 specifically permitted terminations of such discounts at the will of the seller, Gulf. Along the same lines, Gulf urged that its classification of Wellven, Inc. among its contract dealers paying full tank wagon prices was reasonable and that it had properly complied with all applicable pricing regulations.

### Verdict of the Jury

After two hours of deliberation, the jury by its verdict, under the Court's charge,

---

**2.** Section 210 of the ESA provides:

(a) Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.

(b) In any action brought under subsection (a) against any person renting property or selling goods or services who is found to have overcharged the plaintiff, the court may, in its discretion, award the plaintiff reasonable attorney's fees and costs, plus whichever of the following sums is greater:

(1) an amount not more than three times the amount of the overcharge upon which the action is based, or

(2) not less than $100 or more than $1,000; except that in any case where the defendant establishes that the overcharge was not inten-

tional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to the avoidance of such error the liability of the defendant shall be limited to the amount of the overcharge: *Provided*, That where the overcharge is not willful within the meaning of section 208(a) of this title, no action for an overcharge may be brought by or on behalf of any person unless such person has first presented to the seller or renter a bona fide claim for refund of the overcharge and has not received repayment of such overcharge within ninety days from the date of the presentation of such claim.

(c) For the purposes of this section, the term "overcharge" means the amount by which the consideration for the rental of property or the sale of goods or services exceeds the applicable ceiling under regulations or orders issued under this title.

necessarily found that the affidavits were false and that the discounts granted by Gulf were not in response to competitive offers. The jury also found that Gulf's classification of Wellven, Inc. was unreasonable and that Wellven, Inc. was entitled to be classified as a discount recipient. Based on these findings, the District Judge rendered judgment for Wellven, Inc. and awarded $924,141 in damages.[3] The District Court declined to award treble damages and attorney's fees, however, stating that in the judgment of the Court single damages were adequate and that the improper conduct of both parties during the contract period precluded an award of treble damages and attorney's fees.

### Effect of the Verdict of the Jury

█ For the reasons set forth below, we conclude that the jury's findings are sufficiently supported by the trial record. Because we find Gulf's violation willful within the meaning of § 208(a) it is unnecessary to rule on the propriety of the District Court's decision that Wellven, Inc.'s failure to comply with the procedural requirements of § 210(b) was excused by Gulf's failure to raise the matter in its pleadings.[4] We rule as a matter of law that Wellven, Inc. is entitled to recover the overcharges, because the record shows that Gulf willfully violated federal mandatory price regulations by terminating discounts.[5]

█ It is well settled that a reviewing court will not disturb a jury's findings unless they run counter to the weight of the evidence. A jury has the opportunity to observe the demeanor and credibility of witnesses directly, formulating impressions which are at best difficult to formulate from our perspective. Even though this court might have decided the matter differently had it considered the matter firsthand, we must defer to the judgment of the trier of fact.

█ With these concepts firmly in mind, and after carefully reviewing the entirety of the evidence in this case, we conclude that the jury's verdict was reasonable and supported by the trial record.

Under the array of federal statutes, rules, and regulations, Gulf, as a seller of petroleum products, was required to develop a price control structure aggregating its customers into classes of similar purchasers and establishing a maximum ceiling price for the class, so as to preserve customary price differentials. *See* 10 C.F.R. § 212 *et seq.* Customer status on May 15, 1973 was chosen as the starting point for such classifications. Those customers initially purchasing petroleum products from a refiner after this date should have been classified by the company in a category in which they would reasonably fit, based on characteristics similar to customer classes of purchasers then existing. *See Pacific Supply Cooperative v. Shell Oil Company,* 697 F.2d 1084, 1089 (Em.App.1982), which held that a court will not disturb the classification made by a refiner absent a showing that the refiner's classifications are unreasonable and that plaintiff is entitled to an alternative classification. FEA

---

**3.** The parties by stipulation (Rec. Tab D) agreed that if a violation was found damages would be computed by multiplying the number of gallons of gasoline sold between February 1, 1979, the date of Gulf's announced termination of discounts, and January 28, 1981, the date upon which mandatory price controls were terminated, times the discount per gallon for each station. This agreement between the parties greatly facilitated the calculation of damages by eliminating the need to show each individual price difference between the applicable ceiling price and the actual price Gulf charged.

**4.** Under § 210(b) a claim for refund is not necessary if the overcharge is willful as in this case.

**5.** When the essential established material facts concerning the issue of willfulness are not found in the precise language of § 210, but the detailed findings of fact fully prove the existence of those material facts in the precise language of § 210 the detailed findings of fact are sufficient under § 210. *Eastern Air Lines, Inc. v. Atlantic Richfield Company,* 712 F.2d 1402, 1412 (Em.App.1983), *cert. denied,* — U.S. —, 104 S.Ct. 278, 78 L.Ed.2d 258 (1983). So here the jury's necessary findings that the affidavits were false shows a willful violation of § 210 within the meaning of § 208(a).

Ruling 1975–2 attempted to provide guidance to sellers seeking to comply with the philosophy and purpose of the EPAA. There FEA outlined four basic criteria by which customers could be classified, including type of customer, the customer's location, the manner and amount of purchase, and the terms and conditions of the agreements. In so doing, FEA emphasized that refiners were required by applicable regulations to classify customers in a manner which would preserve customary price differentials.

John Burch, Manager of Regulatory Coordination for Gulf, testified at trial that his company had been aware of this ruling and the regulations and had acted in accordance with its provisions in classifying customers. Contract dealers, including Wellven, Inc., who purchased gasoline by long term agreement, were classified separately by their location, by the amount of gasoline purchased, and whether they paid full dealer tank wagon price. Burch admitted that Gulf had classified its other discount recipients separately in a series of single member classes of purchasers. Gulf's primary explanation for not similarly classifying Wellven, Inc. dealers, and instead including them as purchasers at the full dealer tank wagon price, was that the discounts were responsive to competitive offers made to Wellven, Inc. by other refiners, and that FEA Ruling 1975–2 permitted their termination. Gulf introduced no substantial evidence of such competitive offers and totally failed to rebut Wellven, Inc.'s allegations that the affidavits concerning the contracted discounts were signed only after the contracts granting the discounts had already been consummated.[6]

Gulf conceded at one point that the affidavits were required, in part, as a means to prove that Gulf had not engaged in conduct in violation of the federal antitrust statutes. Given this fact, we think the jury could reasonably conclude that Gulf's classification of Wellven, Inc. was unreasonable and most likely only self-serving as a means of illegally increasing prices on gasoline despite applicable price ceilings, as found by the District Court after the verdict (Transcript (Tr.) 4.119). This conclusion is bolstered by the fact that Gulf had previously classified other discount recipients separately and only years later attempted to rescind those discounts through improper means.[7]

Our decision, based on willfulness, does not require an application of our decisions based on failure to make a claim for refund in *Dempsey v. Rhodes Oil Company*, 620 F.2d 274 (Em.App.1980), and *Manning v. University of Notre Dame du Lac*, 484 F.2d 501 (Em.App.1973), which are distinguishable on the facts because of the absence of willfulness in each of those cases.

While the District Judge did not, *per se*, find willfulness for purposes of the overcharge claim, we think his finding that Gulf engaged in a deliberate course of conduct designed to violate pricing regulations (Tr. 4.102–103, 4.119), bolstered by our examination of the trial record, permits us so to find as a matter of law.[8]

Gulf was intimately familiar with federal price regulations on petroleum products that require a refiner to classify its customers into classes of purchasers according to specific criteria in order to preserve customary price differentials among its customers. FEA Ruling 1975–2 and its progeny clarified the particular standards and

---

**6.** Questions of cost pass-through and other permissible factors permitting increases in the ceiling price for a class of purchasers were eliminated from the case by stipulation of the parties (Rec. Tab D).

**7.** We need not address Wellven, Inc.'s argument that an oral demand for refund occurred in February 1979, more than ninety days before it filed suit since Wellven, Inc. did not introduce sufficient evidence indicating such a demand

was made. We reserve decision on the question whether an oral, as distinguished from a written, demand for refund would satisfy the procedural requirements of § 210(b). Further, the conclusion of the District Court that Gulf waived the defense of failure to make a timely claim for refund is not addressed because of the willfulness of the overcharge.

**8.** *See* footnote 5 *supra*.

methods alluded to in the regulations and emphasized the importance of preserving price differentials existing on May 15, 1973. At the same time Gulf was well aware of the fact that charging a price above the applicable ceiling price for a class of purchasers absent a statutory or regulatory justification was a violation of the overall pricing structure. Burch testified that Gulf had spent approximately $35 million in an effort to comply with the federal price controls on petroleum products. Some twenty-five individuals were assigned to the project. Burch himself was quite familiar with FEA Ruling 1975–2, as well as other applicable rulings and regulations. We emphasize that despite these facts, Gulf unilaterally and deliberately elected to terminate discounts to certain members of its discount class of purchasers, or to those who, as stated above, should have been in that class of purchasers, without explanation or credible justification, leading to overcharges above the class's applicable ceiling price. Gulf's primary justification for cancelling the discounts was that they had been offered in response to competitive offers. As a result we conclude Gulf acted willfully and without regard for the regulatory structure's obvious requirements by terminating discounts to Wellven, Inc. dealers.

### Attorney's Fees and Treble Damages

The District Court denied the motion to award Wellven, Inc. three times the amount of the overcharge and attorney's fees. In denying this motion the District Court concluded that Gulf had been engaged in "... an effort to try to come up with some kind of explanation to get themselves out of the requirements of the regulations" (Tr. 4.119); and "... had deliberately set out ... to engage in 'illegal conduct' and in fact had 'dirty hands' ..." but "... that plaintiffs have been more than adequately compensated by the assessment of damages." (Tr. 4.126.)

When this decision to deny attorney's fees and treble damages was made in March 1983, the authoritative interpretation and analysis of the statutory standards of § 210 in *Eastern Air Lines, Inc. v. Atlantic Richfield Company*, 712 F.2d 1402 (Em.App.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 278, 78 L.Ed.2d 258 (1983), were not available to the District Court. These standards, applicable when willful violation is shown, are as follows:

In the absence of such proof [that the overcharge was not intentional and resulted from bona fide error] by the defendant the court in its discretion may award treble damages and attorney's fees if it finds the overcharge was intentional or resulted from reprehensible or criminal conduct, or lack of procedures reasonably adapted to the avoidance of erroneous overcharges, or bad faith, or where required by equity and the ends of justice. (Words in brackets added.)

*Eastern Air Lines, Inc. v. Atlantic Richfield Company, supra*, 712 F.2d at 1412.

These standards do not permit application of other judicial, as distinguished from statutory, concepts of fault and adequate compensation. Included in statutory treble damage standards are the salutary objects of deterrence and encouragement of private enforcement actions.

In 1980 in deciding a related issue we made it clear that the legislative purposes of authorizing private civil actions for treble damages in an action under § 210 for violation of regulations were (1) to deter willful violators of regulations of the DOE, and (2) to encourage aggrieved parties to discover violations of these regulations and to come forward with their complaints, thereby supplementing the enforcement machinery of the government. *Bulzan v. Atlantic Richfield Company*, 620 F.2d 278, 282 (Em.App.1980). These purposes should be considered in applying the standards enunciated in *Eastern Air Lines, Inc. v. Atlantic Richfield Company, supra*, quoted above.

When a district court, at the time of its decision, does not have available the applicable authoritative judicial standards, it is appropriate to remand the issue in question for redetermination under the au-

thoritative standards. *See Marine Petroleum Company v. Champlin Petroleum Company,* 657 F.2d 1231, 1243–1244 (Em. App.1980).

■ Gulf contends that § 210(b) is not applicable to overcharges resulting from wrongful withdrawal of a comparable discount to a member of class of purchasers, when the withdrawal does not result in a charge in excess of the general maximum ceiling price allowable under the pricing regulations. This construction is without merit. In fact the controlling civil action in *Eastern Air Lines, Inc. v. Atlantic Richfield Company, supra,* was based on an overcharge, measured by the comparable price charged to other members of the class of purchasers of which the plaintiff was a member. Further, the language in *Eastern Air Lines, Inc. v. Mobil Oil Corporation,* 677 F.2d 879 (Em.App.1982), relied on by Gulf, was used in regard to a claim of discrimination unrelated to a price ceiling, but the principal claim for relief therein was based on violation of a price ceiling applicable to a class of purchasers. The claim of discrimination in that case was based on the former 10 C.F.R. § 210.-62(b) quoted therein. *See* footnote 7, 677 F.2d at 881.

■ The words "overcharge" and "overcharged" as used in § 210 include both (a) charges in excess of the general maximum allowable ceiling prices under the pricing regulations, and (b) charges in excess of a discounted price to a member of a class of purchasers entitled to the discounted price. A word may comprehend more than one meaning, for as Justice Oliver Wendell Holmes, Jr. noted in *Towne v. Eisner,* 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372, 376 (1918):

> A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used.

Gulf further contends that plaintiff based its action on violation of the general maximum allowable ceiling price, rather than on withdrawal of a discount to which

Wellven, Inc. was entitled as a member of a class of purchasers. This contention is unsupported by the pleadings; by the stipulations, including the one which provided the computation of single damages, if recovered (Volume I, Record on Appeal Tab D; Tr. 4.114); by the evidence, including affidavits, received in efforts to prove and disprove that the discounts were revocable because offered to meet competition; by the discussion by the District Court on the Request for Charge (Tr. 3.102 through 3.111, 4.2 through 4.32); and by material portions of the Charge by the District Court defining the issues (Tr. 4.94 through 4.105).

### Conclusion

For the foregoing reasons the judgment for single damages based on the jury verdict is affirmed. The issue of propriety of an award of treble damages and attorney's fees is remanded for redetermination under § 210 as construed and applied in *Eastern Air Lines, Inc. v. Atlantic Richfield Company, supra.*