In re COORDINATED PRETRIAL PRO-
CEEDINGS IN PETROLEUM PROD-
UCTS ANTITRUST LITIGATION,
M.D.L. 150.

CITY OF LONG BEACH and State of
California, Plaintiffs-Appellants,

v.

EXXON CORPORATION, Mobil Oil Cor-
poration, Shell Oil Company, Chevron
Corporation, (formerly Standard Oil
Company of California), Texaco, Inc.,
and Union Oil Company of California,
Defendants-Appellees.

Nos. 9-95, 9-96.

Temporary Emergency Court of Appeals.

Argued Feb. 13, 1987.

Decided Aug. 18, 1987.

Certiorari Denied Nov. 30, 1987.
See 108 S.Ct. 466.

Gary W. Hoecker and M. Brian McMa-
hon, of Hoecker & McMahon, Los Angeles,
Cal., Royce H. Schulz, William L. Jaeger
and Gary L. Halling, of Broad, Schulz, Lar-
son & Wineberg, San Francisco, Cal., John
R. Calhoun and Robert W. Parkin, City
Attys. and James N. McCabe and Robert G.
Austin, Deputy City Attys., of City of Long
Beach, Long Beach, Cal., John Van De-
Kamp, Atty. Gen., Michael Spiegel, Charles
M. Kagay and Sanford N. Gruskin, Deputy
Attys. Gen., San Francisco, Cal., of State of
Cal., Taylor R. Briggs, Kimba M. Wood,
Howard S. Ockman and Molly S. Boast, of
LeBouef, Lamb, Leiby and MacRae, New
York City, for plaintiffs-appellants.

Ronald C. Redcay, Otis Pratt Pearsall
and Matthew T. Hearney, of Hughes Hub-
bard and Reed, Los Angeles, Cal., Anthony
P. Brown, Walter R. Allan, Phillip L. Jud-
son, Robert P. Taylor and Edward V.
Anderson, of Pillsbury, Madison & Sutro,
San Francisco, Cal., for defendants-appel-
lees.

Before BECKER[*], BROWN and
THORNBERRY[**], Judges.

WESLEY E. BROWN, Judge.

## I. INTRODUCTION

Plaintiffs-Appellants, the City of Long
Beach and the State of California, ("appel-

---

[*] Judge William H. Becker filed a concurring
opinion attached hereto.

[**] Judge Homer Thornberry filed a dissenting
opinion attached hereto.

lants"), brought suits in 1975 against seven major oil companies in California,[1] ("appellees"), alleging that appellees had engaged in an illegal price-fixing conspiracy in violation of the federal and state antitrust statutes and also that appellees breached the Contractors' Agreement. Appellants sought damages and injunctive relief under Sections 4 and 16 of the Clayton Act, 15 U.S.C. Sections 15, 26, and under the Cal. Bus. & Prof.Code Secs. 16700–16758 (Cartwright Act), on the antitrust causes of action for revenues they allegedly lost during the period June 27, 1971 through December 31, 1977, as a result of the price-fixing conspiracy. Appellants also sought damages, accounting and injunctive relief on the breach of contract cause of action. Appellants made no allegations of jurisdiction pursuant to the Economic Stabilization Act of 1970,[2] in the Second Amended Complaint, nor did they contend in the District Court or in these consolidated appeals that appellees had violated the price control statutes or the implementing regulations promulgated thereunder. Indeed, appellants agree and the District Court so found that appellees had complied with the price control standards during the price control periods.

These consolidated appeals[3] by appellants are taken from an order of the District Court (July 17, 1984 Memorandum of Decision) dismissing appellants' federal and state antitrust damage claims from April 12, 1972 to December 31, 1977. The District Court dismissed the antitrust damage claims on the basis that, assuming appellants could prove the alleged antecedent price-fixing conspiracy, they were nonetheless precluded from recovery of antitrust damages during this period to the extent that these claims were based upon crude oil prices in excess of federal price ceilings. The assumed predicate of an antecedent conspiracy, however, was dispelled subsequently by the District Court in its Memorandum of Decision of September 19, 1985, finding that appellants did not "have the evidence to prove the antitrust conspiracy." The District Court dismissed appellants' both federal and state antitrust causes of action in their entirety. Appellants' appeal of the District Court's final judgment of that dismissal is before the Ninth Circuit Court of Appeals and not before this Court. That appeal does not raise any issues which are within this Court's subject matter jurisdiction.

1. The defendants-appellees are: Chevron Corporation (formerly Standard Oil Company of California), Exxon Corporation, Mobil Oil Corporation, Shell Oil Company, Texaco, Inc., and Union Oil Company of California. The seventh defendant, Atlantic Richfield Company, settled with plaintiffs and was dismissed from these suits on December 13, 1984.

2. The Economic Stabilization Act of 1970 ("ESA"), *as amended,* 12 U.S.C. Sec. 1904 note, expired on April 30, 1974. Section 5 of the Emergency Petroleum Allocation Act of 1973, 15 U.S.C. Sec. 754(a)(1), incorporated the judicial review provisions of Section 211 of the ESA. In 1975 Congress enacted the Energy Policy and Conservation Act, Pub.L. 94–163, 89 Stat. 871, 42 U.S.C. Sec. 6201, Note, which amended certain provisions of EPAA. *See Exxon Corp. v. Department of Energy,* 744 F.2d 98, 106–107 (TECA 1984).

3. The procedural history of these consolidated appeals is no less convoluted than the complexity of the legal issues presented for review. Six case numbers (9–87, 9–88, 9–93, 9–94, 9–95 and 9–96) have been assigned by the Office of the Clerk of this Court since the District Court approved an order on December 13, 1984 allowing

interlocutory appeals of its July 17, 1984 Memorandum of Decision to TECA and the Ninth Circuit Court of Appeals. *See In re: Coordinated Pre-Trial Proceedings in Petroleum Products Antitrust Litigation, M.D.L. No. 150,* 761 F.2d 710 (TECA 1985) and 788 F.2d 1571 (TECA 1986). By Order dated March 31, 1986, this Court dismissed Case Numbers 9–87, 9–93 and 9–94 without prejudice. Appellants refiled their appeals from the final orders of the District Court, to which two new numbers have been assigned, 9–95 and 9–96. No. 9–95 is an appeal from a consolidation of the *Long Beach Trust* case, Counts I and II of the Second Amended Complaint, and the *California* case, Fifth Cause of Action of the Second Amended Complaint. The *Long Beach Trust* case concerned crude oil produced from an oil field owned in trust by the City of Long Beach with the State as the beneficiary. The Fifth Cause of Action of the *California* case was severed from that case and consolidated with the *Long Beach Trust* case. No. 9–96 is an appeal from the *Long Beach Proprietary* case. It concerned crude oil produced from an oil field owned by the City of Long Beach in its proprietary capacity.

## II. ISSUES ON APPEAL

The record before us discloses that appellants' concurrent appeals to TECA and the Ninth Circuit Court of Appeals from the July 17, 1984 Memorandum of Decision dismissing appellants' claims for antitrust damages asserted under Section 4 of the Clayton Act are still pending before the Ninth Circuit as well as before TECA. These two concurrent appeals raise the same issues as those which were originally certified by the District Court for review by TECA and the Ninth Circuit. Appellants have reasserted these issues in TECA Nos. 9-95 and 9-96, which may be cogently restated as follows:

A. Whether or not 6 C.F.R. Sec. 101.-34(a)(2), which exempted state and local governments from price controls under certain circumstances, applied to sales of "net profits oil" by appellants during the periods April 12, 1972 to June 13, 1973, and August 19, 1973 to October 25, 1973?

B. Whether or not the operation of federal price controls either was the "effective reason" of the appellants' injury or acted to supplant Section 4 of the Clayton Act so as to deprive appellants of any legal rights to recover damages for the alleged antitrust violation by appellees?

C. Whether or not compliance with Phase III price controls was "voluntary" during the period of January 11, 1973 to June 13, 1973 so that appellees were not prohibited from making appropriate price adjustments for the crude oil sold by appellants during this period?

Appellants assert that the resolution of these issues is within the exclusive appellate jurisdiction of TECA and urge this Court to decide them upon the hypothesis that the allegation of an antecedent price-fixing conspiracy "be accepted as true on appeal." Appellants' Opening Brief, at 4. Because it is not within our appellate jurisdiction to review the propriety of the standard used by the District Court in finding

that there was no triable factual issue of a price-fixing conspiracy, we must decline to consider these appeals upon a premise which is contrary to that factual conclusion reached by the District Court. We believe that the constitutional limitation requires us not to exercise our judicial power in expressing legal opinions that are based upon hypothetical or academic facts. We also believe that a determination of the appropriate legal standard required of appellants to prove the causal connection between their claims of antitrust injury and of antitrust damages as provided under Section 4 of the Clayton Act,[4] is within the exclusive appellate jurisdiction of the Ninth Circuit Court of Appeals. For the reasons given below, we therefore dismiss these consolidated appeals, TECA Nos. 9-95 and 9-96, for lack of a real and substantial controversy as a requisite for invoking our limited appellate jurisdiction.

## III. BACKGROUND

Because it is essential to an understanding of our decision, we will summarize the historical facts of these eleven-year-old cases and the rulings of the District Court which gave rise to the somewhat deformed posture of these appeals. Appellants have engaged in the production and sale of crude oil from the Wilmington Oil Field in California. They sold that crude oil to appellees pursuant to contracts that contained no fixed price terms. Instead, appellants received from appellees sales revenues which were keyed to "posted prices" on various kinds and grades of crude oil set by some, but not all of the appellees. Appellants agreed that the "posting by purchasers of the prices to be paid for crude oil is customary in the petroleum industry." Appellants' Opening Brief, at 6.

The gravamen of appellants' claim was that appellees had engaged in a continuous price-fixing conspiracy, in violation of the

---

4. The relevant portion of Section 4 of the Clayton Act, 15 U.S.C. Sec. 15, provides that: "(a) ... any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover three-fold of the damages by him sustained...."

Sherman Act and the California Cartwright Act, since 1961 to fix and maintain non-competitive "posted prices" on certain kinds and grades of California crude oil below those price levels which buyers in a free and open market would have paid. Appellees contended that on August 15, 1971 the Federal government imposed price ceilings on the purchase of crude oil based upon prices existing in early August 1971. Appellees argued that those price ceilings prevented increases in crude oil prices until the price controls were lifted. On this basis, appellees maintained that it was the Federal government which was the sole cause of the alleged underpricing of the crude oil sold by appellants.

Because price controls set a price ceiling based upon prices existing in the 30–day period preceding August 15, 1971, appellants contended that had appellees not engaged in a conspiracy to underprice the crude oil value in California, higher prices would have prevailed on August 15, 1971. Otherwise stated, appellants asserted that they would have received higher prices during the price-control periods had there not been an antecedent price-fixing conspiracy by appellees to fix those "posted prices." At the oral argument, appellants graphically illustrated that their claims for damages were based upon calculations which measured the allegedly depressed, fixed price on which the price ceiling was actually based and the competitive market price which would otherwise have been used.

Appellees moved for partial summary judgment on appellants' antitrust claims for the period from August 15, 1971 to December 31, 1977. The District Court granted a judgment to appellees, dismissing appellants' antitrust claims during the periods between April 12, 1972 to October 1, 1976, and thereafter to the end of the damage period on the basis that appellants were not entitled to recover antitrust damages upon the claims for appropriate competitive prices that were in excess of the federal price ceilings. In reaching this conclusion, the District Court made three rulings which were contained in a Memorandum of Decision entered July 17, 1984. First, it held the price control regulation, 6

C.F.R. Sec. 101.34(a)(2), did not exempt the sale of "net profits oil" by the appellees from the price control programs. It found that this exemption regulation applied to sales of crude oil by a governmental entity "only if the selling governmental body has the unilateral right to adjust the price and would receive the entire benefit from such adjustment." Second, the District Court said:

> For the purposes of this decision, it is assumed, without in any manner deciding, that the prices for net profits oil received by Long Beach during the thirty-day period ending August 14, 1971, were set pursuant to conspiracy among the defendants. Once price controls were established, on August 15, 1971, Long Beach could not receive more for its oil than the ceiling allowed. From then until April 12, 1971, it could be argued with considerable logic that the defendants were legally responsible for the low ceiling, because it was based automatically upon the conspiratorially adopted prices.

The District Court, however, found that the legal relationships between the appellants and appellees changed on April 12, 1972, because of a letter dated April 12, 1972 from Louis Neeb of the United States Price Commission in which he declined a request by a California oil producers association for an across-the-board increase on the controlled California crude oil prices. The District Court concluded that the action taken by this "appropriate governmental body, in the exercise of its discretion ..., supplanted the conspiracy as the effective reason for the level of the controlled prices." The litigants have characterized this ruling as the "Neeb issue." Third, the District Court accepted appellees' argument that the Phase III price control regulations, like those which prevailed in Phases II and IV, were mandatory legal standards which appellees were required to obey. The District Court found that appellees did comply with these mandatory price control requirements, and concluded that the operation of these regulations deprived appellants of the "legal right" to receive crude oil prices

higher than those permitted by the Phase III price control standards.

We originally were asked to review the propriety of these three District Court rulings upon their certification to this Court in an interlocutory appeal. *See M.D.L. No. 150, supra,* 761 F.2d at 712; and 788 F.2d 1571 (TECA 1986). The District Court entered a Memorandum of Decision on September 19, 1985 upon appellees' motions for summary judgment that "would deny any and all recovery to the plaintiffs growing out of their allegations of conspiracy to depress the prices of crude oil paid by defendants to the plaintiffs." *M.D.L. No. 150,* CV–75–2232–WPG, slip op. at 1 (C.D. Cal. Sept. 19, 1985). The District Court granted appellees' motions for summary judgment, dismissing appellants' federal and state antitrust causes of action upon two alternative bases. The District Court found that "any failure by the defendants to increase the prices that they paid Long Beach for its crude oil during the period" between June 27, 1971 and April 12, 1972 "was due to the effectiveness of (the Mandatory Oil Import Program) and not attributable to any conspiracy." *Id.,* at 8. The District Court also reviewed the evidence in support of the contentions on the merits of the appellants' antitrust causes of action. It found that years of discovery failed to yield any evidence to demonstrate a triable factual issue on the allegations of existence of an actionable price-fixing conspiracy. *Id.,* at 8–9. The District Court entered final judgment on March 17, 1986, decreeing that Counts I and II (Antitrust counts) of the Second Amended Complaint of the *Long Beach Trust* case, No. CV–75–2232–WPG, and the Fifth Cause of Action of the *California* case, No. CV–76–2839–WPG "be dismissed on their merits and with prejudice." The District Court also entered final judgment on April 1, 1986 on the *Long Beach Proprietary* case, CV–82–3252–WPG, dismissing appellants' action for antitrust violation "on the merits and with prejudice." Appellants have filed an appeal with the Ninth Circuit Court of Appeals, seeking a review of the District Court's September 19, 1985 order of dismissal.

## IV. JURISDICTION

An appellate review of the propriety *vel non* of the District Court's conclusion that appellants failed to make out a triable factual issue on the allegations of an illegal price-fixing conspiracy is clearly within the exclusive appellate jurisdiction of the Ninth Circuit Court of Appeals. *See Spinetti v. Atlantic Richfield Company,* 522 F.2d 1401 (TECA 1975). The Ninth Circuit, however, entered an order on October 29, 1986, directing that the briefing schedules on the appeals to that court be "stayed until TECA decides whether it has jurisdiction over the price ceiling issue, or for a period of six months, whichever occurs first." It appears that the Ninth Circuit believes that issues arising from the District Court order of July 17, 1984 are within the exclusive jurisdiction of this Court.

Section 211(b)(2) of the Economic Stabilization Act of 1970, as amended, 12 U.S.C. Sec. 1904 note, incorporated by reference in Emergency Petroleum Allocation Act of 1973, 15 U.S.C. Sec. 754(a)(1), provided that TECA shall have "exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder." It is a fundamental principle that a court created under Article III of the United States Constitution always has the necessary jurisdiction to determine whether it has jurisdiction over the parties to and the subject matter of a case or controversy. *See United States v. United Mine Workers of America,* 330 U.S. 258, 290–92, 67 S.Ct. 677, 694–95, 91 L.Ed. 884, 910–12 (1947). The scope of our inquiry, however, is itself limited by the requirement of an actual controversy which must exist at all stages of the appellate review. *Preiser v. Newkirk,* 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L.Ed.2d 272, 277–78 (1975). It is insufficient to satisfy the minimum constitutional requirement by alleging that a controversy may occur in the future or is contingent upon the happenstance of certain hypothet-

ical events. Constitutional jurisprudence mandates that we refrain from rendering an opinion advising what the law would be upon a hypothetical set of facts that is not raised by a justiciable controversy between parties whose interests are not actually affected by the virtual certainty from the operation of the interdicted law. *See North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 404, 30 L.Ed.2d 413, 415 (1971).

■ In the underlying litigation, appellants sought damages and injunctive relief upon the allegations that appellants had engaged in a price-fixing conspiracy, in violation of the applicable federal and state antitrust laws, and that they breached certain terms of the Contractors' Agreement. A final determination by the District Court concluding that appellants failed to make out a triable factual issue on their claims of existence of an illegal price-fixing conspiracy eliminated the hypothetical predicate of an illegal conspiracy by appellees which the District Court had assumed in reaching its rulings which were contained in the July 17, 1984 Memorandum of Decision.

The issues presented here concern the propriety of the District Court's determinations that appellants could not recover antitrust damages under Section 4 of the Clayton Act for the period from April 12, 1972 to the end of the damage period as a matter of law. The necessity for a review by an appellate court on the damages issues, however, depends upon appellants' success in establishing the existence of an illegal price-fixing conspiracy in violation of the applicable federal and state antitrust laws. The determination by the District Court that there was no material evidence to raise a triable factual issue of the allegations on an illegal price-fixing conspiracy is the subject of the appeal at issue before the Ninth Circuit Court of Appeals. Thus, until the litigants have exhausted their appeals to the Ninth Circuit and, if appropriate, to the Supreme Court on the propriety of the standard used by the District Court in dismissing appellants' antitrust causes of action, there is no basis for the litigants to invoke our appellate jurisdiction. A for-

tiori, unless there has been an adjudication on the grounds upon which such antitrust liability would be imposed, a decision by this Court on any of the issues now before us of the propriety *vel non* of the District Court's rulings which were contained in the July 17, 1984 Memorandum of Decision would be purely theoretical and advisory. The requirement that there be a "case" or "controversy" as set out in Section 211(b)(2) of the ESA and Section 2, Article III of the United States Constitution prevents us from rendering any gratuitous advisory opinions.

We noted earlier that appellants filed two concurrent appeals with TECA and the Ninth Circuit Court of Appeals. These two appeals raise the same issues concerning the rulings of the District Court which were contained in the July 17, 1984 Memoradum of Decision. *See M.D.L. No. 150, supra*, 761 F.2d at 711. The record before us discloses that the appeal to the Ninth Circuit is still pending. We believe that a determination on the viability of the antitrust laws applicable to the allegations of the appellants in view of the enactment of price control statutes, i.e., ESA and EPAA, is within the exclusive appellate jurisdiction of the Ninth Circuit. In this connection, it is clear that the Ninth Circuit has the exclusive appellate jurisdiction to review the District Court's ruling of July 17, 1984 on the antitrust damages issue under Section 4 of the Clayton Act. We believe that such a determination on the antitrust damages issue, by analyzing it under the proper causation standard required of appellants to prove their claims of antitrust injury and of antitrust damages, would not involve any issues which require this Court's intervention in adjudicating these antitrust and breach of contract lawsuits.

It is not inconceivable that a decision by this Court at this time on the issues in the instant consolidated appeals could be rendered moot by the eventual outcome of the appeals to the Ninth Circuit. Until such time as the underlying antitrust liability has been resolved in a forum having the appropriate subject matter jurisdiction over the antitrust causes of action, we believe that the possibility and scope of appellants'

right to damages, if any, remains to be crystallized.

Because the appellants request this Court to assume appellate jurisdiction over issues which are not now involved in a real and substantial controversy, we dismiss these consolidated appeals on the basis that they failed to satisfy the jurisdictional requirements provided by Section 211(b)(2) of the ESA, incorporated in 15 U.S.C. Sec. 754(a)(1).[5]

## V. ORDER

IT IS THEREFORE ORDERED that TECA No. 9–95 and TECA No. 9–96 be and are hereby DISMISSED WITHOUT PREJUDICE.

WILLIAM H. BECKER, Judge, concurring:

### Exclusive Jurisdiction Of This Court

The period of time when the alleged events complained of by the Plaintiff-Appellants occurred was from June 27, 1971 through December 31, 1977. During this time the Emergency Petroleum and Allocation Act of 1973 (EPAA) P.L. 93–159 and the succeeding Energy Policy and Conservation Act (EPCA) P.L. 94–163 were successively in effect. *Cf. Exxon Corporation et al. v. U.S. Department of Energy et al.* (TECA 1984), 744 F.2d 98. In the EPAA and the EPCA the United States District Courts were given continuing jurisdiction to entertain actions under Section 211 of the Economic Stabilization Act of 1970 (ESA). See the EPAA Section 5, 15 U.S.C. 754(a)(1) and the EPCA Section 523(4)(b), 42 U.S.C. 6393(b).

In these provisions the jurisdiction of the United States District Courts and the exclusive appellate jurisdiction of this Court

provided in § 211 of the ESA were continued in effect under the EPAA and the EPCA, as noted above. *Cf.* 12 U.S.C. 1904 note.

Therefore this Emergency Court of Appeals (TECA) has exclusive jurisdiction of any appeal of justiciable issues arising under the EPAA or EPCA, as held in the earlier opinions of this Court allowing an interlocutory appeal, dismissing without prejudice interlocutory and subsequent appeals by Plaintiff-Appellants in this litigation. *In Re: Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* M.D.L. No. 150 (TECA 1985), 761 F.2d 710, allowing an interlocutory appeal followed by (TECA 1986), 788 F.2d 1571, dismissing without prejudice all appeals then pending.

### Current Lack of Actual Justiciable Issues Within Exclusive Jurisdiction of this Court

The first question that arises is whether at this time, and in the current state of the record, we should exercise our exclusive jurisdiction or await the decision of the Ninth Circuit Court of Appeals on the contemporaneous appeal within the jurisdiction of the Ninth Circuit Court of Appeals.

I agree with the conclusion of the majority opinion that we should not exercise our jurisdiction at this time because of a lack of an appealable final judgment or appealable order (including an order generally moot, but capable of repetition yet evading review), within our exclusive jurisdiction; and because it is possible that no such appealable judgment or order on issues within our exclusive jurisdiction may ever exist (while also possible that it may exist). A general rule is not in order in this area

---

5. We note that appellants' claims for breach of contract remain to be tried upon the District Court's interlocutory order denying appellees' motion for summary judgment on those claims. Appellants urge us to decide the issues now before us because they anticipate that the appellees would raise defenses similar to those asserted in their motions for partial summary judgment on the antitrust damages issues. We do not believe that there are issues in this litigation which fall within the "capable of repetition, yet

evading review" doctrine. *See Weinstein v. Bradford,* 423 U.S. 147, 148, 96 S.Ct. 347, 348, 46 L.Ed.2d 350, 352 (1975). For the reasons given in this Opinion, we decline to consider the appellants' request upon their prediction of what may or may not occur. However, if one or both of these appeals become justiciable under the principles set forth herein, counsel may on stipulation seek approval by this Court, or on order of this Court, provide for use of any part of the record or briefs heretofore filed herein.

because the facts in each case must be considered in making a ruling.

Nevertheless, in light of the dissent, the following comment is appropriate.

When contemporaneous concurrent ("bifurcated") appeals, from a final judgment or appealable order, are pending in the TECA and in a Court of Appeals of the United States, and present appealable issues (a) within the exclusive jurisdiction of this Court and (b) within the broader jurisdiction of the Court of Appeals, this Court should proceed first to decide the issue or issues within the exclusive jurisdiction of this Court, so that the Court of Appeals can thereafter proceed to decide finally the contemporaneous appeal within its general jurisdiction. *Cf. Longview Refining Company v. Shore* (TECA 1977), 554 F.2d 1006, *cert. denied,* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977); *United States v. Cooper* (TECA 1973), approved in *Bray v. United States,* 423 U.S. 73, 96 S.Ct. 307, 46 L.Ed.2d 215 (1975), and similar later cases, such as *Wellven Inc. v. Gulf Oil Corporation* (TECA 1984), 731 F.2d 892.

Application of this order of decision answers all the problems of manageability of contemporaneous "bifurcated" appeals to the TECA and the Court of Appeals discussed in the opinion in *Coastal States Marketing v. New England Petroleum Corporation* (CA.A.2 1979), 604 F.2d 179, the problem and suggestion in note 10 of that opinion at page 187 of 604 F.2d, *supra,* and is consistent with the prior decisions of this Court.

And for these and the reasons given in the majority opinion, I concur in the majority opinion.

### Some Additional Reasons for Lack of Agreement With the Dissenting Opinion

Having agreed with the majority opinion that the appeals to this Court should be dismissed without prejudice, agreement or disagreement with any of the substantive conclusions of the dissenting opinion is not in order. But it is noted that many of the factual assumptions, the conclusions and reasons of the dissenting opinion remain to be considered by this Court, when and if they may be lawfully decided by this Court in the future.

This appeal presents to this Court an unusual question of jurisdiction, properly decided at this time in the majority opinion on principles of Constitutional, statutory and jurisprudential law, often expressed in concepts of actual justiciable controversy, justiciability, finality, mootness, and standing of appellant. *Cf. 20 Am.Jur.2d* Courts §§ 80 and 81, and cases cited in the notes, annotations and Law Reviews cited therein.

The precise question is presented by concurrent appeals from the judgment of the District Court of the United States and to a Circuit Court of Appeals of the United States and to this Temporary Emergency Court of Appeals of the United States (TECA). The judgment of the District Court appealed from can be affirmed on an issue or issues within the general appellate jurisdiction of the Court of Appeals of the United States, which makes the issue within the exclusive unique jurisdiction of this Court (TECA), irrelevant, moot (in the general sense) lacking in justiciability and standing of appellant required for appellate review by this Court of the issue within its exclusive jurisdiction. Often it is obvious in concurrent appeals to the Court of Appeals and this Court that a decision on the subject of appeal to this Court is necessary to a final decision by the Court of Appeals. In these circumstances this Court proceeds to the decision on the issue or issues within its exclusive jurisdiction, inextricably or apparently intertwined with the disposition of the appeal to the Court of Appeals. *Cf. Longview Refining Company v. Shore, supra* (TECA 1977), 554 F.2d 1006, *cert. denied,* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977), and similar later cases. But these are not the circumstances of these concurrent appeals to the Court of Appeals of the United States and to this Court (TECA).

It is conceivable that the decision of the Court of Appeals of the United States in the concurrent appeal may affirm the judgment of the District Court on an issue or issues that make a decision on the question

within the exclusive jurisdiction of this Court, lacking in justiciability, generally moot, irrelevant, and the position of appellant in this Court lacking in standing. In those circumstances it would be unconstitutional and unlawful under controlling decisions for this Court to render an appellate decision, on the presently unrealized hypothesis that the decision by the Court of Appeals would render a decision on a question or questions within the exclusive jurisdiction of this Court necessary and lawful. On the mootness and the Constitutional basis for the doctrine, see 2 *Federal Procedure*, Lawyers Edition, § 3.617, page 588–589, and § 3.618, pages 588–590, in which it is stated:

A federal appellate court has no power to determine the merits of a question which has become moot. This prohibition is based on the requirement of Article III of the Constitution, which provides that the judicial power of the United States shall extend only to cases and controversies. Consequently, a federal appellate court cannot decide a moot question, because a decision on a moot question constitutes an advisory opinion, given in an abstract context, which cannot affect the rights of the litigants in the case before the court. Instead, review is only permitted where the judgment of the appellate court will have some material effect, will resolve a real and substantial controversy between adverse parties, and will result in the granting of relief. However, even though an appeal might not have an immediate effect on the parties, it is not moot if a party will eventually suffer prejudice if the decision below is not reversed. (Notes, footnotes citing authorities, and § 3.619 on "Capable of repetition, yet evades review" exception omitted.)

This appeal falls in none of the exceptions to the rule of mootness. Brilmayer, *The Jurisprudence of Article III: Perspectives on the "Case or Controversy" Requirement,* 93 Harvard Law Review 297 (1979).

The controlling decisions supporting these conclusions are ably set out in the majority opinion. To that excellent opinion are added the following additional statements and authorities.

In *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), after holding in Part IV–A that the case of Jane Roe presented a justiciable controversy on appeal, and before holding that the case of Dr. Halford did not present a justiciable controversy, the Supreme Court of the United States in Part IV–B stated at page 125 of 410 U.S., at page 712 of 93 S.Ct.:

The usual rule in federal cases is that an actual controversy must exist at stages of appellate or certiorari review, and not simply at the date an action is initiated. *United States v. Munsingwear, Inc.,* 340 U.S. 36, 95 L.Ed. 36, 71 S.Ct. 104 (1950); *Golden v. Zwickler* [394 U.S. 103, 22 L.Ed.2d 113, 89 S.Ct. 956 (1969)], supra; *SEC v. Medical Committee for Human Rights,* 404 U.S. 403, 30 L.Ed.2d 560, 92 S.Ct. 577 (1972).

Under that last controlling decision the Supreme Court of the United States, the relevant questions of justiciability, standing, finality and general mootness, and ultimately of existence of a Constitutional case or controversy must be determined as of the time of submission of the appeal, not at some earlier time of the controversy that existed when the action was being litigated in the District Court. *Roe v. Wade, supra,* 410 U.S. at page 125, 93 S.Ct. at page 712.

Applying this principle in this appeal to construction of Article III of the Constitution of the United States relating to cases or controversies and to the related questions of justiciability, finality, general mootness, standing and appealability, the majority opinion properly concludes to dismiss this appeal without prejudice.

If the Court of Appeals decides the questions within its jurisdiction in a manner to render the decision on this appeal to this Court unnecessary or undesirable under the law, the appeal to this Court remains ineffective.

If on the other hand, the Court of Appeals decides the issues that are the subjects of appeal to that Court in a manner that makes necessary a decision by this Court on an issue or issues within its exclu-

sive jurisdiction, the Court of Appeals can decide whether to render a judgment subject to the decision of this Court on issues within its exclusive jurisdiction, or withhold final judgment of the Court of Appeals until this Court decides the issues within its exclusive jurisdiction.

To save time and expense, if an issue or issues within the exclusive jurisdiction of this Court become appealable, then an appellant or appellants can again appeal and move that submission of the new appeal or appeals on issues presently dismissed without prejudice be entertained on the basis of the record and current relevant supplemental records and briefs, as may be necessary or desirable.

THORNBERRY, Judge, dissenting:

Plaintiffs appeal final judgments dismissing their antitrust claims. *In re Coordinated Pretrial Proceedings*, M.D.L. No. 150 (C.D.Cal. March 17, 1986) (Rule 54(b) final judgment dismissing antitrust counts in both CV 75–2232 and CV 76–2839); *Long Beach v. Standard Oil Company*, CV 82–3252 (C.D.Cal. April 1, 1986) (final judgment dismissing case). As explained in its September 19, 1985, memorandum decision, the district court rendered judgment based on two alternative holdings. *See In re Coordinated Pretrial Proceedings*, M.D.L. No. 150 slip op. at 8–9 (C.D.Cal. Sept. 19, 1985) (memorandum of decision explaining summary judgment on all antitrust claims). In the first holding, the district court examined the impact of three federal programs: the Mandatory Oil Import Program ("MOIP"), federal price controls, and the entitlements program. It concluded that those three programs collectively precluded plaintiffs from recovering antitrust damages on the basis that defendants conspired to depress the price of their oil. *See id.* at 2–8; *see also In re Coordinated Pretrial Proceedings*, M.D.L. No. 150 (C.D.Cal. July 17, 1984) (price controls partial summary judgment); *In re Coordinated Pretrial Proceedings*, M.D.L. No. 150 (C.D.Cal. Dec. 13, 1984) (entitlements program partial summary judgment). In the second holding, the district court concluded that after eight years of discovery, plaintiffs had no proof of any antitrust conspiracy. *See In re Coordinated Pretrial Proceedings*, M.D.L. No. 150 slip op. at 8–9 (C.D.Cal. Sept. 19, 1985) (memorandum of decision explaining summary judgment on all antitrust claims).

Plaintiffs raise three issues on appeal: the Neeb issue, the exemption issue, and the Phase III issue. *See supra* p. 200 (issues B, A, and C respectively). Those three issues arise only in the context of the district court's price controls ruling, which forms part of its MOIP-price controls-entitlements program holding. The majority dismisses plaintiffs' appeal without prejudice because, in its words,

[a] final determination by the District Court concluding that appellants failed to make out a triable factual issue on their claims of existence of an illegal price-fixing conspiracy eliminated the hypothetical predicate of an illegal conspiracy by appellees which the District Court had assumed in reaching its rulings which were contained in the July 17, 1984 Memorandum of Decision.

*Supra* p. 203. I agree with the majority that the Neeb issue, *see supra* p. 200 (issue B), is no longer a live issue in the case. I disagree, however, with the majority's determination that we have no jurisdiction to decide the exemption and Phase III issues.

In its original price controls ruling, the district court assumed that defendants' conspiracy caused the price controls to be lower than they would have been absent the conspiracy. *In re Coordinated Pretrial Proceedings*, M.D.L. No. 150 slip op. at 7–8 (C.D.Cal. July 17, 1984) (price controls partial summary judgment). The Neeb issue then was whether the district court correctly assessed the effect of federal price controls on defendants' antitrust liability—that is, whether Mr. Neeb's letter cut off defendants' liability for their antecedent conspiracy. *See supra* p. 200 (issue B). The final judgments defendants now appeal no longer present the Neeb issue. The district court's MOIP ruling in its September 19, 1985, memorandum of decision destroyed the factual predicate for

the Neeb issue. *See In re Coordinated Pretrial Proceedings*, M.D.L. No. 150 slip op. at 2–8 (C.D.Cal. Sept. 19, 1985) (memorandum of decision explaining summary judgment on all antitrust claims). The Neeb issue assumed an antecedent antitrust conspiracy. By holding that the MOIP rather than defendants' conspiracy caused the allegedly low price of California crude when price controls took effect, the district court erased its earlier assumption that defendants' conspiracy caused lower price ceilings. The MOIP ruling therefore destroyed the underlying assumption of the Neeb issue. I agree with the majority that these appeals no longer present the Neeb issue, *see supra* p. 200 (issue B).

The majority, however, misses the distinction between the Neeb issue and the two other ESA issues. In not recognizing jurisdiction to decide the exemption and Phase III issues, *see supra* p. 200 (issues A and C respectively), the majority opinion ignores the district court's language in its September 19, 1985, memorandum decision. The district court based its decision on two *alternative* holdings, one of which necessarily decided two ESA issues and one of which involved no ESA issues. The district court stated:

> The foregoing [ (the MOIP-price controls-entitlements program ruling) ] is believed to provide a mandate for summary judgment for the defendants on the antitrust issues. However, in consideration of the possibility that higher authority might disagree, I shall devote the remainder of this memorandum to a discussion of my *alternative* reason for granting summary judgment: After more than eight years of discovery, the plaintiffs simply do not have the evidence to prove the antitrust conspiracy they allege.

*See In re Coordinated Pretrial Proceedings*, M.D.L. No. 150 slip op. at 8–9 (C.D. Cal. Sept. 19, 1985) memorandum of decision explaining summary judgment on all antitrust claims) (emphasis added). Even though the district court's first holding no longer decided the Neeb issue, it still necessarily decided both the exemption and the Phase III issues. The district court did not suddenly retract that first holding, which was based on the three federal programs, when it articulated its *alternative* holding, which was based on lack of evidence. In fact, the district court set forth its alternative holding in case an appellate court reversed its MOIP-price controls-entitlements program holding.

Assume that the TECA did not exist and that plaintiffs had appealed on all issues to the Ninth Circuit. In that case, the Ninth Circuit could have decided the case by affirming the district court on the basis of the MOIP-price controls-entitlements program holding, without ever deciding whether there was sufficient evidence of an antitrust conspiracy. In other words, the Ninth Circuit could have affirmed the district court on the basis that plaintiffs are not entitled to antitrust damages as a matter of law without regard to whether there was any antitrust conspiracy. Under the majority's holding, the Ninth Circuit cannot decide the case on that basis because the TECA will not decide the ESA issues in the district court's first holding until at least the Ninth Circuit has decided that the district court erred in its second (lack of evidence) holding.

The majority refuses to decide the ESA issues because the Ninth Circuit may affirm the district court's second (lack of evidence) holding and thus moot the ESA issues in the district court's first holding. The same concern arises, however, in any case sustained by two alternative holdings, only one of which involves ESA issues. The Second Circuit foresaw this problem in *Coastal States Marketing v. New England Petroleum Corp.*:

> We note, but do not resolve, the problem that might be posed by a district court adjudication in favor of a defendant that is alternatively rested on both ESA and non-ESA grounds. If appeals are noticed to both a court of appeals and the TECA, the choice of an appropriate initial appellate route might be influenced by a determination of whether appellate resolution of ESA issues is to be encouraged in the interests of promoting certainty concerning a complex regulatory scheme, or discouraged in the manner that resolu-

tion of constitutional issues is disfavored if non-constitutional grounds are available. The former approach suggests initial consideration by the TECA, with the court of appeals staying its appeal to await the TECA determination of the ESA issue. The latter approach suggests a stay of the TECA appeal, pending court of appeals resolution of the non-ESA issue.

604 F.2d 179, 187 n. 10 (2d Cir.1979). The Second Circuit never considered the possibility that an alternative, yet sufficient, basis for the district court's decision might altogether deprive the TECA of jurisdiction over ESA issues in the other holding.

Dismissal by the TECA is not appropriate unless another court of appeals has already mooted the ESA issues. The district court decided the exemption and Phase III issues, and that brings those issues within the jurisdiction of the TECA. *Texaco, Inc. v. Department of Energy*, 616 F.2d 1193, 1198 (Temp.Emer.Ct.App.1979). That the Ninth Circuit may later moot those ESA issues does not preclude us from reviewing and deciding them now. Were that the case, the Ninth Circuit could say with equal logic that it could not review the second (lack of evidence) holding because a subsequent TECA decision might render that second holding moot. In other words, the Ninth Circuit could say that the sufficiency of the evidence issue in the second holding is hypothetical because the first holding may preclude recovery as a matter of law. Either the first (MOIP-price controls-entitlements program) holding or the second (lack of evidence) holding is sufficient alone, yet neither is necessary to sustain the judgment. The Ninth Circuit has already stayed its consideration of plaintiffs' appeal pending a decision from this court. Speedy resolution of the ESA issues would allow the Ninth Circuit to resolve the entire case as quickly as possible on the basis of either the first (MOIP-price controls-entitlements program) or the second (insufficient evidence) holding, whichever it deems more appropriate. Therefore, I dissent from the majority opinion because I would review and decide the exemption and Phase III issues.